EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
JULIE L. GARLAND
Senior Assistant Attorney General
ANYA M. BINSACCA
Supervising Deputy Attorney General
AMANDA MURRAY, State Bar No. 223829
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA 94102-7004
 Telephone: (415) 703-5741
 Fax: (415) 703-5843
 Email: Amanda.Murray@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CHARLES LEWIS,<br><br>                                Petitioner,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>                                Respondent. | C07-02465 CW<br><br>**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:    The Honorable<br>              Claudia Wilken |

## INTRODUCTION

Charles Lewis is a California state inmate at the California Medical Facility, proceeding pro se in this habeas corpus action. Petitioner challenges the Governor's reversal of his 2004 parole grant.[1] Because Petitioner fails to prove that the state court decisions denying relief are contrary

---

    1. A proper habeas respondent is the person having custody of the petitioner, such as the warden. 28 U.S.C. § 2254, Rule 2(a). But because the actions complained of in this petition concern the Governor's decision denying Petitioner parole, "the Governor" and "Respondent" will be used interchangeably.

to, or an unreasonable interpretation of, clearly established federal law, or that the decisions involved an unreasonable determination of the facts, his disagreement with the Governor's parole denial does not entitle him to a writ of habeas corpus and his petition should be denied.

On May 16, 2007, this Court issued an order to show cause. Respondent Suzan L. Hubbard, Acting Warden, answers as follows:

## ANSWER TO THE ORDER TO SHOW CAUSE

In response to the petition for writ of habeas corpus filed on March 8, 2007, Respondent hereby admits, denies, and alleges the following:

1. Petitioner is in the lawful custody of the California Department of Corrections and Rehabilitation after being convicted of first degree murder and sentenced to an indeterminate life-term in prison. (Ex. A, Abstract of Judgment.) Additionally, Petitioner was also convicted of robbery, the sentence for which was to run concurrent to his indeterminate life-term sentence. (*Id.*) Petitioner does not challenge his underlying conviction in the current proceeding.

2. Respondent affirmatively alleges that on September 23, 1976, Petitioner, Jeffrey Colbert, and Gary Hasznos robbed the Odyssey Head Shop. (Ex. B, Probation Officer's Report at 3.) During the robbery, Petitioner pistol whipped Mr. Silva, the store owner, and shot him in the shoulder. (*Id.*) Petitioner then tied Mr. Silva up, covered his head with a blanket, and took $1,000 from his wallet. (*Id.*) According to Petitioner, he gave the money to Hasznos. (*Id.* at 5.)

3. Respondent affirmatively alleges that, according to law enforcement, Hasznos called the sheriff's department and reported the robbery. (Ex. B at 4.)

4. Respondent affirmatively alleges that on September 25, 1976, Petitioner, Colbert, and Hasznos met at Petitioner's cousins' home. (Ex. B at 4.) After learning Hasznos did not have the money from the robbery, Hasznos and Colbert began fighting. (*Id.* at 5.) Hearing them argue, Petitioner's cousins demanded that Hasznos leave their home. (*Id.* at 4.) Complying with the order, Petitioner and Colbert left the home with Hasznos between them. (*Id.*)

5. Respondent affirmatively alleges that on September 26, 1976, Hasznos's nude body was found in the parking lot of Candlestick Park. (Ex. B at 4.) According to the medical examiner, Hasznos had multiple abrasions and cuts, covering his entire body from the top of his

head down to his feet. (*Id.*) Unable to determine the exact cause of death, the medical examiner noted that: (a) there were multiple blows to the head resulting in numerous skull fractures and lethal brain damage; and (b) a stab wound had penetrated the chest wall and punctured Hasznos's lung in two separate places. (*Id.* at 4-5.)

6. Respondent affirmatively alleges that murdering Hasznos was not Petitioner's first violent offense. (Ex. C, Bureau of Criminal Justice Identification CII Record at 1-4.) Petitioner has been convicted of disturbing the peace, kidnaping, statutory rape, theft, robbery, federal bank robbery, solicitation to commit a felony, possessions of narcotics, and aggravated assault. (Ex. B at 1-2, Ex. C at 1-4.) Moreover, Petitioner was on federal parole for his federal bank robbery convictions when he murdered Hasznos. (Ex. B at 1-2; Ex. C at 2-3.) In total, Petitioner's criminal history spans seventeen years. (*Id.*)

7. Respondent admits that, on September 15, 2004, the Board of Parole Hearings (Board) found Petitioner suitable for parole. (Ex. D, Chronological History at 10.)

8. Respondent admits that on February 11, 2005, the Governor's office issued a cover letter and written decision, indicating that Governor Schwarzenegger had reversed the Board's decision finding Petitioner suitable for parole. (Ex. E, Governor's Indeterminate Sentence Parole Release Review and Cover Letter.) The cover letter informed petitioner that the Governor's decision was based on the same factors considered by the Board and that the decision was made pursuant to Penal Code section 3041.2, authorizing the Governor to review the Board's parole decisions regarding persons sentenced to an indeterminate term for a murder conviction. (Ex. E at 1.)

9. Respondent affirmatively alleges that the Governor's decision to deny Petitioner parole was based on: (a) Petitioner's participation in a "cruel and senseless attack" while on federal parole and after having spent time in jail and on probation for committing other violent crimes; (b) Petitioner admitted to kicking and beating Hasznos, including finding a rug and wrapping Hasznos in it to dispose of his body; (c) Colbert's testimony regarding Petitioner's participation in Hasznos's murder and the jury's conclusion that Petitioner was guilty of a willful, deliberate, and premeditated killing; and (d) Petitioner's repeated, blatant disregard for the law and his

Answer to Order to Show Cause; Supporting Mem. of P. & A.　　　　Lewis v. Schwarzenegger
C07-02465 CW

inability or unwillingness to conform his behavior based on his extensive and significant violent criminal history. (Ex. E.)

10. Respondent affirmatively alleges that the Governor considered factors indicating Petitioner's suitability for parole: the Governor noted that Petitioner had remained mostly disciplinary free; participated in educational, self-help, and vocational activities; and received favorable reports from institutional staff and mental health evaluators. (Ex. E.) The Governor also noted Petitioner's age and the need for adequate parole plans to ensure Petitioner would be able to provide for himself financially – given his history of committing crimes for financial gains. (*Id.*) However, the Governor asserted that Petitioner's parole plans did not tip "the scales either in favor or against his parole suitability . . . ." (*Id.*) Ultimately, the Governor concluded that the factors tending to support a parole grant did not yet outweigh the gravity of Petitioner's commitment offense and his significant criminal history, and denied Petitioner's parole accordingly. (*Id.*)

11. Respondent admits that the San Francisco County Superior Court provided a four-page reasoned decision denying Petitioner's petition for writ of habeas corpus on October 8, 2005.[2] (Ex. F, Superior Court Pet. & Denial.) The court determined that there was some evidence supporting the Governor's conclusion denying parole: the gravity of Petitioner's commitment offense and prior criminal conduct posed an unreasonable risk of danger to society. (*Id.*) Specifically, the court noted that Petitioner's own admission, corroborated by Colbert's testimony, that he kicked and beat Hasznos, helping to wrap his nude, brutalized body in a rug for disposal in a parking lot, provided some evidence that Petitioner was an active participant in a cruel murder and that it was carried out in a dispassionate and calculated manner. (*Id.* at 4.) Moreover, the court concluded that Petitioner's senseless attack over stolen money – resulting in Hasznos's death – indicated that the motive was very trivial in relation to the offense. (*Id.* at 4.) The court also cited Petitioner's significant criminal history as weighing heavily against his

---

2. Respondent requested the petition from the San Francisco Superior Court, but has not received it. Respondent will provide this document upon receipt.

Answer to Order to Show Cause; Supporting Mem. of P. & A.   Lewis v. Schwarzenegger
C07-02465 CW

4

parole and noted that Petitioner was on federal parole for another crime at the time of the murder. (*Id.*) Thus, the court could not say "that the Governor erred in reversing the decision of the Board." (*Ibid.*)

12. Respondent admits that the California Court of Appeal denied Petitioner's petition for writ of habeas corpus on February 2, 2006. (Ex. G, Appellate Court Pet. & Denial.)

13. Respondent admits that the California Supreme Court denied Petitioner's request for review on February 7, 2007. (Ex. H, Supreme Court Pet. & Denial.)

14. Respondent admits that Petitioner's state court petitions generally allege the same claims as in this federal petition.[3] Petitioner has exhausted his state court remedies regarding his claims that the Governor's decision to reverse the Board's 2004 grant of parole was not supported by any evidence.[4] However, Respondent denies that Petitioner has exhausted his claims to the extent that they are more broadly interpreted to encompass any systematic issues beyond this particular review of parole denial.

15. Respondent denies that the state court's denial of habeas corpus relief was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court law, or that the denial was based on an unreasonable interpretation of facts in light of the evidence presented. Petitioner therefore fails to make a case for relief under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254.

16. Respondent denies that Petitioner has a federally protected liberty interest in parole; thus, Petitioner fails to assert a basis for federal jurisdiction. The Constitution does not create a

---

3. In his state court petitions, Petitioner asserted that the Governor's reversal of the Board's parole grant violates his right to be granted parole under California's uniform-term matrices found in California Code of Regulations, title 15, section 2403. *In re Dannenberg*, 34 Cal. 4th 1070. However, Petitioner failed to assert this claim in his federal petition and, thus, Respondent will not address it.

4. Petitioner argues that the Governor's decision relied on improper, incorrect, and unreliable information, the Governor failed to consider factors indicative of parole suitability, and the Governor wrongfully relied on Petitioner's commitment offense and prior criminal history in denying him parole. (See generally, Petn.) Respondent interprets these claims as a challenge to the sufficiency of the evidence relied on by the Governor in reaching his decision.

Answer to Order to Show Cause; Supporting Mem. of P. & A.                    Lewis v. Schwarzenegger
                                                                              C07-02465 CW

1  liberty interest in a conditional parole release date unless the unique structure and language of a
2  state parole statute creates an "expectancy of release." *Greenholtz v. Inmates of Neb. Penal &*
3  *Corr. Complex*, 442 U.S. 1, 12 (1979); *Bd. of Pardons v. Allen*, 482 U.S. 369, 374 (1987). In
4  2005, the California Supreme Court determined that the state's parole scheme is a two-step
5  process that does not impose a mandatory duty to grant parole to life inmates before a finding of
6  parole suitability. *In re Dannenberg*, 34 Cal. 4th 1061, 1087 (2005). Thus, California state
7  inmates do not have an expectation of early release, and without such an expectation, do not have
8  a federally protected liberty interest in parole. The alternative analysis in *Sandin v. Connor*, 515
9  U.S. 472, 484 (1995), also fails to create a federal liberty interest in parole because remaining in
10 prison to serve a contemplated life sentence does not create an atypical or significant hardship in
11 comparison to that of ordinary prison life. Respondent acknowledges that the Ninth Circuit came
12 to the opposite conclusion in *Sass v. California Board of Prison Terms*, 461 F.3d 1123 (9th Cir.
13 2006), but preserves the argument.

14    17. If Petitioner has a federally protected liberty interest in parole, Respondent
15 affirmatively alleges that Petitioner had an opportunity to present his case to the Board, and that
16 the Governor provided him with a detailed explanation as to why he was denied parole. (Ex. C;
17 Ex. I, Parole Consideration Hearing, dated September 15, 2004.) Thus, Petitioner received all
18 process due under *Greenholtz*, 442 U.S. 1, the only clearly established United States Supreme
19 Court law regarding the due process rights of inmates at parole consideration hearings.

20    18. Respondent affirmatively alleges that the some-evidence standard of review does not
21 apply because the United States Supreme Court has expressly held that less process is due in
22 parole-release determinations than for guilt determinations, such as those made in prison
23 disciplinary hearings. Greenholtz, 442 U.S. at 15; *cf. Carey v. Musladin*, __ U.S. __, 127 S. Ct.
24 649 (2006) (lack of any on-point United States Supreme Court authority governing the disputed
25 issue precludes habeas relief under AEDPA); *but see Sass*, 461 F.3d at 1128-29.)

26    19. In the alternative, Respondent affirmatively alleges that the Governor considered all
27 relevant and reliable evidence before it, and that his decision to deny parole is supported by some
28 evidence. Thus, Respondent denies that the Governor relied on any improper, incorrect, or

1 unreliable evidence or that the Governor failed to consider factors indicative of parole suitability.

20. Respondent denies that the Governor's decision denying Petitioner parole was improperly based on the commitment offense and his criminal history. Cal. Penal Code § 3041(b) (current convicted offense and past offenses are the parole authority's primary considerations in determining parole suitability); Cal. Code Regs. tit. 15, § 2402(b) (parole hearing panel shall consider all relevant reliable information when determining parole suitability, including the prisoner's commitment offense and criminal history); *Irons v. Carey*, 479 F.3d 658, 663-64 (9th Cir. 2007) (upholding parole denial when some evidence supported the commitment offense only) (petitions for rehearing filed); *Sass*, 461 F.3d at 1129 (parole authority did not act arbitrarily when it upheld a parole denial based on a drunk driver's commitment offense and prior driving under the influence convictions).

21. Respondent denies that continued reliance on an unchanging factor such as the petitioner's commitment offense and criminal history violates due process. *Sass*, 461 F.3d at 1129 (undermining the dicta in *Biggs* and finding that "[u]nder AEDPA, it is not our function to speculate about how future parole hearings could proceed"); Cal. Penal Code § 3041(b) (current convicted offense and the prisoner's criminal history are the parole authority's primary considerations in determining parole suitability); Cal. Code Regs. tit. 15, § 2402(b) (parole hearing panel shall consider all relevant reliable information when determining parole suitability, including the prisoner's current offense and past criminal conduct); *Sass*, 461 F.3d at 1129 (parole authority did not act arbitrarily when it upheld a parole denial based on a drunk driver's commitment offense and prior driving under the influence convictions).

22. Respondent denies that Petitioner is entitled to immediate relief.

23. Respondent denies that the Governor's decision denying parole violated Petitioner's due process rights.

24. If the petition is granted, Petitioner's remedy is limited to a new parole consideration hearing before the Board that comports with due process. *Benny v. U.S. Parole Comm'n*, 295 F.3d 977, 984-985 (9th Cir. 2002); *In re Rosenkrantz*, 29 Cal.4th 616, 658 (2002).

25. Respondent admits that Petitioner's claim is timely under 28 U.S.C. § 2244(d)(1), and

that the petition is not barred by the non-retroactivity doctrine.

26. Respondent denies that an evidentiary hearing is necessary in this matter.

27. Respondent affirmatively alleges that Petitioner fails to state or establish any grounds for habeas corpus relief.

28. Except as expressly admitted above, Respondent denies, generally and specifically, each and every allegation of the petition, and specifically denies that Petitioner's administrative, statutory, or constitutional rights have been violated in any way.

Accordingly, Respondent respectfully requests that the petition for writ of habeas corpus be denied.

## MEMORANDUM OF POINTS AND AUTHORITIES

### ARGUMENT

### I.

**THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS CLAIM WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED FEDERAL LAW, NOR WAS IT BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS.**

The purpose of federal habeas corpus review is to supervise the quality of state courts' adjudications of federal constitutional claims. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972). AEDPA governs this Court's review of Petitioner's habeas corpus petition because Petitioner is in custody pursuant to a state court judgment. 28 U.S.C. § 2254; *Shelby v. Bartlett*, 391 F.3d 1061, 1063 (9th Cir. 2004); *Gill v. Ayers*, 342 F.3d 911, 917 (9th Cir. 2003) (the provisions of AEDPA apply to cases filed after its effective date of April 24, 1996.)

Under AEDPA, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *Wilson v. Czerniak*, 355 F.3d 1151, 1154 (9th Cir. 2004). "[C]learly established Federal law under § 2254(d)(1) is the governing legal principle or principles set forth

1  by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

AEDPA is a "highly deferential standard for evaluating state court rulings" and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002). Thus, the state court decision may not be set aside based merely on a showing of error or of an incorrect application of the governing federal law. *Andrade*, 538 U.S. at 75; *Bell v. Cone*, 535 U.S. 685, 694, 699 (2002) ("it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied [the Supreme Court] precedent incorrectly").

Here, the state courts adjudicated Petitioner's federal constitutional claims on the merits. (Exhs. F-H.) The San Francisco County Superior Court issued a four-page reasoned decision finding that the Governor's decision was supported by some evidence. (Ex. F.) Petitioner's subsequent related petitions for review in the California Court of Appeal and California Supreme Court were summarily denied. (Exhs. G, H.)

The United States Supreme Court has stated that when the state's highest court issues an unexplained order denying the petition, a federal court is to "look-through" the state supreme court's decision to the last explained state court decision to determine whether the supreme court's denial was a decision on the merits. *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 805-06 (1991). A prisoner's federal claim is "adjudicated on the merits" if the state court decision finally resolves the parties' claims based on the substance of the constitutional claim advanced, rather than on procedural or other grounds precluding state court review of the merits. *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004). A federal court is to apply the following presumption: "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Id.* at 803. Thus, "looking through" the California Supreme Court's decision to the reasoned decisions issued by the San Francisco Superior Court, the California Supreme Court likewise denied Petitioner's claims on the merits. *Id.*

The state court decisions denying Petitioner's claim for federal habeas relief are neither

Answer to Order to Show Cause; Supporting Mem. of P. & A.            Lewis v. Schwarzenegger
                                                                      C07-02465 CW

contrary to or an unreasonable application of federal law, nor were they based on an unreasonable determination of the facts in light of the evidence presented. First, Petitioner received all process required under *Greenholtz*, the only clearly established United States Supreme Court case regarding the due process rights of inmates at parole consideration hearings. Second, the state court decisions did not contradict clearly established federal law and were not based on an unreasonable interpretation of the facts; rather, the state courts correctly conclude that some evidence supports the Governor's decision. Because Petitioner cannot show that the state court's adjudication merits reversal under the deferential AEDPA standard of review, his federal habeas corpus petition should be denied. 28 U.S.C. § 2254(d); *Andrade*, 538 U.S. at 71.

### A. Petitioner Received All Process Due Under the Clearly Established Federal Law Addressing Due Process in the Parole Context.

In *Greenholtz*, the United States Supreme Court established the due process protections required in a state parole system. The Court held that the only process due at a parole consideration hearing is an opportunity for the inmate to present his case, and if parole is denied, an explanation for the denial. *Greenholtz*, 442 U.S. at 16. Petitioner received both of these protections at his 2004 parole consideration hearing. First, Petitioner had a chance to fully present his case before the Board. Although Petitioner declined to discuss the commitment offense, he did address his current feelings about the crime, including Hasznos's death, and his extensive prior criminal history. (Ex. I at 22-30.) The Board also questioned Petitioner about his prior drug use, discussed his participation in educational, self-help, and vocational activities, and reviewed his parole plans should he be released. (*Id.* at 36-58.) Although the Board granted parole, it advised Petitioner that the Governor had authority to reverse the Board's decision. (*Id.* at 68.)

In a three-page decision, the Governor reversed the Board and explained the reasons for denying Petitioner parole. Specifically, the Governor found that: (a) Petitioner participated in a cruel and senseless attack while on federal parole – after having spent time in jail and on probation for committing other violent crimes; (b) Petitioner admitted to kicking and beating

1 Hasznos, and helping to dispose of Hasznos's body by finding a rug and wrapping Hasznos in it;
2 (c) Colbert testified that Petitioner played an integral role in Hasznos's murder and the jury
3 concluded that Petitioner was guilty of a willful, deliberate, and premeditated killing; and (e)
4 Petitioner had repeatedly shown blatant disregard for the law and was unable or unwilling to
5 conform his behavior based on his extensive and significant violent criminal history.  (Ex. E.)

6   Thus, Petitioner received both an opportunity to present his case before the Board and a
7 reasoned explanation as to why the Governor denied him parole.  Accordingly, he received all
8 process due, and the petition must be denied.

9 **B.    The Reasoned State Court Decision Upholding the Board's Parole Denial Was Not Contrary to Clearly Established Law and Was Based on a Reasonable Interpretation of the Facts.**
10

11   Under AEDPA a state court habeas decision upholding the Board's parole denial must not
12 be contrary to clearly established federal law and must be based on a reasonable interpretation of
13 the facts. 28 U.S.C. § 2254.  AEDPA affords a great deal of deference to the state courts, stating
14 that "a determination of a factual issue made by a State court shall be presumed to be correct."
15 28 U.S.C. § 2254(e)(1).  The United States Supreme Court recently reiterated that for AEDPA
16 purposes, the federal courts must only apply clearly established Supreme Court precedent. *Carey*
17 *v. Musladin*, __ U.S. __, 127 S. Ct. 649 (2006).  Indeed, the Ninth Circuit also recognizes that
18 federal courts must apply Supreme Court precedent under AEDPA. *Nguyen v. Garcia*, 477 F.3d
19 716, 718, 727 (9th Cir. 2007) (state court's decision was not contrary to clearly established
20 federal law because no applicable Supreme Court authority); *Locke v. Cattrell*, 476 F.3d 46, 53
21 (9th Cir. 2007) (affirmed denial of habeas petition because no Supreme Court case supported
22 petitioner's contention; thus, state court adjudication was not unreasonable under AEDPA).
23 Because *Greenholtz* is the *only* United States Supreme Court authority describing the process due
24 at a parole consideration hearing when an inmate has a federal liberty interest in parole, the
25 *Greenholtz* test should apply in this proceeding.
26   However, despite the *Musladin* court's holding and the lack of Supreme Court authority on
27 point, the Ninth Circuit has held that the some-evidence standard is "clearly established" as to
28 parole decisions. *Sass*, 461 F. 3d 1123.  Thus, Respondent will argue this case accordingly.

Answer to Order to Show Cause; Supporting Mem. of P. & A.        Lewis v. Schwarzenegger
                                                                 C07-02465 CW

Assuming Petitioner has a federally protected liberty interest in parole, and if the "minimally stringent" some-evidence standard is applicable, then the requirements of due process would be satisfied if there is "any evidence in the record that could support the conclusion reached by the board." *See Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (applying some-evidence standard to prison disciplinary hearing). The some-evidence standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence;" rather, it assures that "the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary." *Id.* at 457. Thus, both the "reasonable determination" standard of AEDPA and the some-evidence standard of *Hill* are very minimal standards.

### 1. The superior court reasonably found that the Board's parole denial was supported by some evidence.

Here, the San Francisco County Superior Court properly found that some evidence supported the Governor's decision denying parole, concluding that the gravity of Petitioner's commitment offense and prior criminal history posed an unreasonable risk of danger to society. (Ex. F at 3.) Specifically, the court noted that Petitioner's own admissions, corroborated by Colbert's testimony, that he kicked and beat Hasznos, helping to wrap his nude, brutalized body in a rug for disposal in a parking lot, provided some evidence that Petitioner was an active participant in a cruel murder and that it was carried out in a dispassionate and calculated manner. (*Id.* at 4.) Moreover, the court concluded that Petitioner's "cruel and senseless attack" over stolen money – resulting in Hasznos's death – indicated that the motive was very trivial in relation to the offense. (*Id.* at 4.) The court also cited Petitioner's significant criminal history as weighing heavily against his parole, noting that Petitioner was on federal parole for another crime at the time of the murder. (*Id.*) Thus, the Court could not say "that the Governor erred in reversing the decision of the Board." (*Ibid.*)

Further, Petitioner's assertion that the Governor relied on improper, incorrect, and

Answer to Order to Show Cause; Supporting Mem. of P. & A.          Lewis v. Schwarzenegger
                                                                              C07-02465 CW
12

unreliable information is unfounded.[5/] First, the superior court determined that Petitioner's claims that the Governor made false statements regarding Petitioner's prior criminal history were unsupported by any evidence. (Ex. F at 1.) Second, the superior court found that the Governor used reliable evidence in denying Petitioner parole. The superior court noted that the Governor is entitled to independently review the Board's decision granting parole and is required to consider the same factors governing the Board in rendering its parole decision, including all relevant, reliable information available to him. (*Id.* at 2.); *Rosenkrantz*, 29 Cal.4th at 660; Cal. Code of Regs., tit. 15, §§ 2281, subd. (b), 2402.[6/] Moreover, the court recognized that the Governor may give different weight to the evidence and resolve any evidentiary conflicts. (Ex. F at 2.) Thus, the superior court properly found that Petitioner's admissions (in conjunction with Colbert's testimony) were reliable – and provided some evidence – that Petitioner actively participated in Hasznos's cruel murder. (*Id.* at 4.)

Finally, contrary to Petitioner's apparent belief that he should be paroled based on the evidence presented during the hearing supporting his parole, the Supreme Court has stated that in parole release, there is no set of facts which, if shown, mandate a decision favorable to the inmate. *Greenholtz*, 442 U.S. at 9-10. Instead, under the some-evidence standard, the Court's inquiry is limited solely to determining whether the state court properly found that the Governor's decision to deny parole is supported by any evidence in the record, *i.e.*, some evidence. *See Hill*, 472 U.S. at 455. Thus, because there is some evidence supporting the

---

5. Despite the Governor's statement that Petitioner did not have any employment prospects, the superior court found that Petitioner's prospect of future employment was corroborated by supporting documentation. (Ex. F at 1; Ex. E.) Nonetheless, the Governor indicated that Petitioner's parole plans, including his employment, neither tipped the scales for nor against parole suitability. (Ex. E.)

6. Petitioner's assertion that the Governor's review is limited to the same materials as provided to the Board is incorrect. (Petn. at 15.) Under the California Constitution and CDCR's regulations, the Governor's parole decision must be based on the same factors – not materials – as reviewed by the Board. Cal. Code Regs., tit, 15 § 2281, subd. (b); Cal. Const., art. V, § 8(b). Because the Governor may independently review Petitioner's parole grant, he may rely on any evidence – whether or not provided to the Board – when considering Petitioner's parole suitability. Cal. Code Regs., tit, 15 § 2281, subd. (b); Cal. Const., art. V, § 8(b).

Petitioner's parole denial, the state courts properly upheld the Governor's decision. Accordingly, there is no basis for this Court to overturn its decision: the state court's denial of habeas relief meets the standards of AEDPA and the petition for writ of habeas corpus must be denied.

### 2. The Board may rely on unchanging factors to deny Petitioner parole.

Petitioner argues that due process precludes the Board from relying on the circumstances of the commitment offense or other static factors to deny parole. This argument fails for a number of reasons. First, California Penal Code section 3401(b) requires that the Governor examine the commitment offense. Second, the California Supreme Court held in *Dannenberg* that the Board may heavily rely on the circumstances of the commitment offense. *In re Dannenberg*, 34 Cal. 4th 1061, 1094 (2005).

The case of *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003) does not compel a different result. In *Biggs*, the Ninth Circuit stated that the Board's continuing reliance on an unchanging factor to deny parole "could result in a due process violation." *Id*. at 917. However, the *Biggs* court did not definitively indicate that reliance on an unchanging factor necessarily violates due process, only that it possibly could. Indeed, the court praised Biggs for being "a model inmate," and found that the record was "replete with the gains Biggs has made," including a master's degree in business administration. *Id*. at 912. Nonetheless, the court denied habeas relief because the Board's decision to deny parole—which relied solely on the commitment offense—was supported by some evidence. Most importantly, the statement in *Biggs* is merely circuit court dicta, and not clearly established federal law sufficient to overturn a state court decision under AEDPA standards. The Ninth Circuit has emphasized that *Biggs* does not contain mandatory language, and that "[u]nder AEDPA, it is not our function to speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129. The *Sass* court rejected the argument that the Board's reliance on "immutable behavioral evidence" to deny parole violated federal due process.[7] Moreover, the Ninth Circuit again recently revisited this issue in dicta in

---

7. This Court has also recognized that the Board may properly rely on static factors to deny parole. In a recent decision, this Court noted that "[p]ast criminal conduct is not some arbitrary factor like eye color that has nothing to do with present dangerousness. Recidivism concerns are

Answer to Order to Show Cause; Supporting Mem. of P. & A.   Lewis v. Schwarzenegger
C07-02465 CW

*Irons*, holding that despite "substantial" evidence of rehabilitation, the Board acted properly within its discretion in continuing to rely on the circumstances of the inmate's offense to deny parole. *Irons*, 479 F.3d at 663-664.

Thus, the Governor is not precluded from using circumstances of the commitment offense to deny parole. Because Petitioner has failed to prove that the state court decisions were contrary to AEDPA standards, his claim must be denied.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

---

genuine. California's parole scheme does not offend due process by allowing the [Board] to predict that an inmate presents a present danger based on a crime he committed many years ago." *Hill v. Kane*, 2006 WL 3020923 at *3 (N.D. Cal. Oct. 26, 2006) (citations omitted).

## IV.

## CONCLUSION

Petitioner's disagreement with the Governor's parole denial does not entitle him to a writ of habeas corpus. Rather, he must prove that the state court decisions denying relief are contrary to, or an unreasonable interpretation of, clearly established federal law, or that the decisions involved an unreasonable determination of the facts. Petitioner fails to meet this burden. First, he received all process due under *Greenholtz*, the only clearly established federal law regarding the due process necessary at a parole consideration hearing. Second, the state court decisions denying Petitioner's claim did not involve an unreasonable interpretation of the facts; rather, the state courts reasonably found that some evidence supports the Board's denial of parole. For these reasons, the petition for writ of habeas corpus must be denied.

Dated: July 13, 2007

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

JULIE L. GARLAND
Senior Assistant Attorney General

ANYA M. BINSACCA
Supervising Deputy Attorney General

AMANDA MURRAY
Deputy Attorney General
Attorneys for Respondent

20094009.wpd
SF2007200418

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:  **Lewis v. Schwarzenegger**

No.:  **C07-02465 CW**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **July 16, 2007**, I served the attached

### ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

**Charles Lewis**
**B-83314**
**California Medical Facility**
**P.O. Box 2000**
**Vacaville, CA 95696-2000**
in pro per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **July 16, 2007**, at San Francisco, California.

|  |  |
|---|---|
| M.M. Argarin | /s/ M.M. Argarin |
| Declarant | Signature |

20096214.wpd