# EXHIBIT G

ORIGINAL

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

In re CHARLES W. LEWIS,

on Habeas Corpus.

A112758

(San Francisco County
Super. Ct. No. 5178)

FILED
Court of Appeal First Appellate District

FEB -2 2006

Diana Herbert, Clerk

By_____Deputy Clerk

BY THE COURT:

The petition for writ of habeas corpus is denied.

(Ruvolo, P.J., Reardon, J., and Rivera, J., joined in the decision.)

Date:    FEB - 2 2006    _____    P.J.

RUVOLO, P.J.

## AFFIDAVIT OF TRANSMITTAL

I am a citizen of the United States, over 18 years of age, and not a party to the within action; that my business address is 350 McAllister Street, San Francisco, CA 94102; that I served a copy of the attached material in envelopes addressed to those persons noted below.

That said envelopes were sealed and shipping fees fully paid thereon, and thereafter were sent as indicated via the U.S. Postal Service from San Francisco, CA 94102 or, alternatively, served via inter-office mail.

I certify under penalty of perjury that the foregoing is true and correct.

Diana Herbert, Clerk of the Court

**I. CALANOC**

_____        FEB - 2 2008
Deputy Clerk                            _____
                                        Date

CASE NUMBER: A112758

Office of the Clerk                              Material Sent YES: ____
San Francisco Hall of Justice - Criminal Division
Attention: Criminal Appeals
850 Bryant Street - Room 306
San Francisco, CA 94103

Charles W. Lewis                                 Material Sent YES: ____
B83314
California Medical Facility
P.O. Box 2500  U-349-S
Vacaville, CA 95696-2500

Office of the Attorney General                   Material Sent YES: ____
455 Golden Gate Avenue - Suite 1100
San Francisco, CA 94102

serv



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

```
┌─────────────────────────────────┐
│             FILED               │
│ Court of Appeal First Appellate District │
│          FEB - 2 2006           │
│        Diana Herbert, Clerk     │
│ By_____Deputy Clerk │
└─────────────────────────────────┘
```

| In re CHARLES W. LEWIS, | A112758 |
| on Habeas Corpus. | (San Francisco County Super. Ct. No. 5178) |

BY THE COURT:

The petition for writ of habeas corpus is denied.

(Ruvolo, P.J., Reardon, J., and Rivera, J., joined in the decision.)

Date: _____FEB - 2 2006_____    ___RUVOLO, P.J.___ P.J.

ORIGINAL

MC-275

Name     Charles W. Lewis

Address  California Medical Facility

         P. O. Box 2500, U-349-S

         Vacaville, CA 95696-2500

CDC or ID Number     B-83314

DIVISION FOUR

FILED
COURT OF APPEAL FIRST APPELLATE DISTRICT

JAN 26 2006

DIANA HERBERT, CLERK

BY _____
DEPUTY CLERK

CALIFORNIA COURT OF APPEAL

FIRST APPELLATE DISTRICT
(Court)

Charles W. Lewis
Petitioner
              vs.

Arnold Schwarzenegger, Governor, and
Respondents     M. Veal, Acting Warden.

**PETITION FOR WRIT OF HABEAS CORPUS**

No. **A112758**

*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

**This petition concerns:**

| | | | |
|---|---|---|---|
| [ ] A conviction | | [ ] Parole | |
| [ ] A sentence | | [ ] Credits | |
| [ ] Jail or prison conditions | | [ ] Prison discipline | |
| [X] Other *(specify):* | gubernatorial reversal of Board finding of parole suitability | | |

1. Your name: Charles W. Lewis

2. Where are you incarcerated? California Medical Facility, Vacaville, California

3. Why are you in custody? [X] Criminal Conviction    [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

      1st degree murder

      1st degree robbery with firearm

   b. Penal or other code sections: PC § 187

   c. Name and location of sentencing or committing court: San Francisco County Superior Court

   d. Case number: 95226

   e. Date convicted or committed: 11/18/77

   f. Date sentenced: ?

   g. Length of sentence: 7 years to life

   h. When do you expect to be released? upon finding of parole suitability

   i. Were you represented by counsel in the trial court? [X] Yes.    [ ] No. If yes, state the attorney's name and address:

      P. Meeks, Public Defender

4. What was the LAST plea you entered? *(check one)*

   [XX] Not guilty.    [ ] Guilty    [ ] Nolo Contendere    [ ] Other:

5. If you pleaded not guilty, what kind of trial did you have?

   [XX] Jury    [ ] Judge without a jury    [ ] Submitted on transcript    [ ] Awaiting trial

6. **GROUNDS FOR RELIEF**

   **Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

   The Governor's reversal of the Board's grant of parole violates petitioner's

   "right to have his term fixed at a number of years that is proportionate to his offense."

   a. Supporting facts:

   Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

   See attached.

   b. Supporting cases, rules, or other authority (optional):

   *(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

   In re Rodriguez (1975) 14 Cal.3d 639;

   People v. Wingo (1975) 14 Cal.3d 169;

   see attached petition.

7. **Ground 2 or Ground** _____ *(if applicable)*:

The Governor's decision to reverse the Board's finding of parole suitability

was based upon improper and unreliable evidence, in violation of petitioner's

right to due process.

a. **Supporting facts:**

See attached.

b. **Supporting cases, rules, or other authority:**

See attached petition.

MC-275 [Rev. January 1, 1999]    **PETITION FOR WRIT OF HABEAS CORPUS**    Page four of six

7. Ground 2 or Ground __3__ *(if applicable)*:

The Governor's failure to consider certain factors indicative of suitability, as well as his continued reliance on immutable factors, violates Due Process.

a. Supporting facts:

See attached.

b. Supporting cases, rules, or other authority:

In re Scott, 34 Cal.Rptr.3d 905 (2005);

see attached petition.

MC-275 [Rev. January 1, 1999]          **PETITION FOR WRIT OF HABEAS CORPUS**          Page four of six

8. Did you appeal from the conviction, sentence, or commitment?  [X] Yes.  [ ] No.    If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):  Court of Appeal

   b. Result: ___conviction affirmed_____    c. Date of decision: ___?___

   d. Case number or citation of opinion, if known: ___?___

   e. Issues raised:  (1) ___?___

            (2) _____

            (3) _____

   f. Were you represented by counsel on appeal?  [ ] Yes.  [XX] No.  If yes, state the attorney's name and address, if known:

   _____

9. Did you seek review in the California Supreme Court?  [ ] Yes.  [ ] No.    If yes, give the following information:

   a. Result: _____    b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised:  (1) _____

            (2) _____

            (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

   N/A

11. Administrative Review:

   a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

   There are no available administrative remedies.

   _____

   _____

   _____

   _____

   _____

   _____

   b. Did you seek the highest level of administrative review available?  [X] Yes.  [ ] No.
   *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?    [X] Yes. If yes, continue with number 13.    [ ] No. If no, skip to number 15.

13. a. (1) Name of court:  San Francisco County Superior Court

(2) Nature of proceeding (for example, "habeas corpus petition"):    habeas corpus petition

(3) Issues raised: (a)    same as ground 1 here

(b)    same as ground 2 here

(4) Result (Attach order or explain why unavailable):    petition denied (see attached)

(5) Date of decision:    Oct. 12, 2005

b. (1) Name of court:

(2) Nature of proceeding:

(3) Issues raised: (a)

(b)

(4) Result (Attach order or explain why unavailable):

(5) Date of decision:

c.  For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

N/A

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
There has been no delay.  In any event, petitioner is ignorant of the law and legally blind, with extremely limited access to the prison law library.

16. Are you presently represented by counsel?    [ ] Yes.    [X] No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court?    [X] Yes.    [ ] No. If yes, explain:

Lewis v. Perez, 42 U.S.C. § 1983 action pending in the U.S.D.C., E.D. Cal.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

N/A

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:  1/24/06                        ▶ Charles H. Lewis
                                              (SIGNATURE OF PETITIONER)

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE CITY AND COUNTY OF SAN FRANCISCO

Department No. 22

**FILED**
San Francisco County Superior Court

OCT 12 2005

GORDON PARK-LI, Clerk
BY:_____
Deputy Clerk

IN THE MATTER OF THE APPLICATION OF )
)
)
CHARLES W. LEWIS )
)
Petitioner, )
)
FOR A WRIT OF HABEAS CORPUS )
)

WRIT NO. 5178

ORDER

A Petition for Writ of Habeas Corpus has been received.

Since 1977, Petitioner has been serving concurrent sentences of five and seven years to life for first-degree robbery with a firearm and first-degree murder. Petitioner is currently serving his sentence at the California Medical Facility in Vacaville, CA.

In September 2004, the Board of Prison Terms ["Board"] found Petitioner suitable for parole. Governor Arnold Schwarzenegger reversed the Board's decision in February 2005. In support of his reversal, the Governor contends that the gravity of Petitioner's commitment offense and significant criminal history weigh against granting parole.

Petitioner contends that the Governor's reversal of the Board's decision violated his right to due process and was not supported by the record. Specifically, he claims that the following factual errors in his record resulted in his parole reversal: 1) he was never convicted of kidnapping; 2) prior to his conviction at age 34 he spent only 8 years in prison; 3) he had a verifiable offer of employment upon release. Of these claims, only the prospect of future employment is corroborated by supporting documentation.

I.    THE GOVERNOR'S POWER OF REVIEW

The Governor may review Board decisions granting parole and can affirm, modify, or reverse them. Cal. Const. Art. V § 8(b); PC § 3041.2(a). The Governor must base his decision on the same factors that the Board is required to consider. Cal. Const. Art. V

§ 8(b).  These factors are enumerated in California Code of
Regulations, Title 15, Section 2402.[1]

The factors showing parole unsuitability are that the inmate:
1) committed the offense in an especially heinous, atrocious, or
cruel manner,[2] 2) possesses a previous record of violence, 3) has an
unstable social history, 4) previously has sexually assaulted
another individual in a sadistic manner, 5) has a lengthy history of
severe mental problems related to the offense, and 6) has engaged in
serious misconduct while in prison.  PC § 2402(c).

The factors showing parole suitability are that the inmate: 1)
does not possess a record of violent crime, 2) has a stable social
history, 3) has shown signs of remorse, 4) committed the crime as
the result of significant stress in his life, 5) lacks any
significant history of violent crime, 6) is of an age that reduces
the probability of recidivism, 7) has made realistic plans for
release or has developed marketable skills that can be put to use
upon release, and 8) has engaged in institutional activities that
indicate an enhanced ability to function within the law upon
release.  PC § 2402(d).

Although the Governor must base his decision on the factors
enumerated in section 2402, he independently reviews the evidence
and may give it different weight and resolve any conflicts.  In re
Rosenkrantz (2002) 29 Cal.4th 616, 677.

Accordingly, due process of law requires only that some
evidence relevant to the enumerated factors support the Governor's
decision.  (Rosenkrantz, supra, 29 Cal.4th at 676-77.)  If so, it is
irrelevant that a court might reach a different conclusion on the
evidence.  (Id. at 677.)

## II.  PETITIONER'S HISTORY

In 1978, Petitioner, aged 34, and two partners, participated in
the robbery of a store.  As his partners waited outside, Mr. Lewis
entered the rear of the store and confronted the owner.  He struck
the store owner with the gun he was carrying, demanded money, and
shot him in the shoulder.  After he shot the store owner, Mr. Lewis
tied him up, covered him with a blanket, and took $1,000 dollars
from his wallet.

---

[1] Unless otherwise indicated, all further statutory references are to Title 15 of
the California Code of Regulations.
[2] This might include circumstances where: 1) multiple victims were attacked in the
same or separate incidents, 2) the offense was carried out in a dispassionate and
calculated manner; 3) the victim was abused, defiled, or mutilated; 4) the inmate
demonstrated an exceptionally callous disregard for human suffering; and 5) the
motive is inexplicable or very trivial in relation to the offense.  (§2402(c)(1).)

After the robbery, Mr. Lewis and his partner Mr. Colbert learned that their third partner, Mr. Hasznos, no longer had the loot. A fight broke out during which Mr. Lewis and Mr. Colbert kicked, beat and stabbed Mr. Hasznos. He then helped his accomplice bundle Mr. Hasznos' nude corpse into a rug. It was dumped in the parking lot of a baseball stadium, where it was discovered the next day.

Petitioner has an extensive criminal history. Petitioner was sent to the California Youth Authority for battery. He was convicted and incarcerated on numerous occasions as an adult, including disturbing the peace, petty theft, solicitation to commit a felony, grand theft, armed robbery and statutory rape of a seventeen year-old girl. Mr. Lewis was on federal parole when he killed Mr. Hasznos.

During incarceration, Petitioner was disciplined five times for serious rules violations - including fighting, possession of marijuana and alcohol.

After time, Petitioner's behavior in prison improved. He earned an A.A. degree and worked toward a Bachelor's Degree. He has taken vocational classes. He has also participated in many therapy groups and religious activities. Prison staff have commended his behavior. Petitioner has realistic parole plans and has received favorable mental health evaluations.

## III. SOME EVIDENCE EXISTS TO SUPPORT THE GOVERNOR'S REVERSAL

Due process of law requires only that some evidence relevant to the enumerated factors support the Governor's decision. Rosenkrantz, supra, 29 Cal.4th at 676-77. If so, it is irrelevant that a court might reach a different conclusion on the evidence. Id. at 677.

First, this court finds that some evidence supports the Governor's conclusion that the gravity of the commitment crime weighs against a finding that Petitioner is suitable for parole, an offense which, the Governor stated is sufficient basis to conclude that his release from prison would pose an unreasonable risk of danger to society at this time.

An inmate may be found unsuitable for parole if the crime was committed in a heinous, atrocious, or cruel manner. PC § 2402(c)(1). This might include circumstances where the offense was carried out in a dispassionate and calculated manner or the motive is inexplicable or very trivial in relation to the offense. PC § 2402(c)(1).

Petitioner's own admission that in conjunction with an accomplice, he kicked and beat Mr. Hasznos to death provided the Governor with some evidence that the offense was carried out in a dispassionate and calculated manner.  The participation in the "cruel and senseless attack" over stolen money that resulted in Hasznos' death provided the Governor with some evidence to support a belief that the motive was very trivial in relation to the offense. On this point, the Governor's determination was a reasonable exercise of discretion supported by some evidence.

Further, the Governor found that Petitioner's significant criminal history weighed heavily against his parole. In fact, Petitioner was on federal parole for another crime at the time of the murder.

The court cannot say that the Governor erred in reversing the decision of the Board.

For the foregoing reasons, Petitioner's writ of habeas corpus is DENIED.

Oct 8, 2005
_____
Date

_____
Judge of the Superior Court

## DECLARATION OF MAILING

I, _Michael Brodheim_ declare:

I am a citizen of the United States, over the age of

eighteen years and not a party to the within action;

My legal mailing address is the California Medical Facility,

P.O. Box 2500, Vacaville, CA 95696-2500;

That, on _Jan. 24th_, 2006, I served a copy of the
                    Petition for Writ of Habeas Corpus with
foregoing _Memorandum of Points and Authorities in Support Thereof (and Exhibits)_

by placing said copy in the United States mail at Vacaville,

California, County of Solano, addressed as follows:

```
Clerk, Court of Appeal
First Appellate District
350 McAllister St.
San Francisco, CA 94102
```

I declare under penalty of perjury that the foregoing is

true and correct.

EXECUTED at Vacaville, California on _1/24_, 2006.

_Michael Brodheim_                    _Michael Brodheim_
Declarant's Printed Name             Declarant's Signature



DIVISION II           ORIGINAL

Charles W. Lewis
B-83314
California Medical Facility
P. O. Box 2500, U-349
Vacaville, CA 95696-2500

Petitioner, pro se

FILED
COURT OF APPEAL FIRST APPELLATE DISTRICT

JAN 26 2006

DIANA HERBERT, CLERK
BY_____DEPUTY CLERK

CALIFORNIA COURT OF APPEAL

FIRST APPELLATE DISTRICT

CHARLES W. LEWIS,                )   Case No. A112758
                                 )
        Petitioner,              )   PETITION FOR WRIT OF HABEAS
                                 )   CORPUS WITH MEMORANDUM OF
        v.                       )   POINTS AND AUTHORITIES IN
                                 )   SUPPORT THEREOF
ARNOLD SCHWARZENEGGER,           )
Governor of California, and      )
M. VEAL, Acting Warden,          )
                                 )
        Respondents.             )
_____ )

I.

INTRODUCTION

1.  Petitioner, an indeterminately sentenced prisoner who is
legally blind and has twice now (at consecutive parole
consideration hearings) been deemed suitable for release on
parole, herein challenges the February 8, 2005, decision of the
Governor to reverse the parole board's latest finding that
petitioner, having been incarcerated now for nearly three decades
on a sentence of seven years to life, would in fact not pose an
unreasonable risk of danger to society if released from prison at
this time.

II.

PARTIES

2.  Petitioner is a state prisoner, here proceeding pro se,
who was received on November 18, 1977, by the California

1

Department of Corrections ("CDC"), now the Department of
Corrections and Rehabilitation, to serve concurrent sentences of
five and seven years to life in prison following convictions of
first degree robbery and first degree murder in Alameda County
and San Francisco County, respectively.

3.   Respondent Schwarzenegger is Governor of the State of
California.  Under the California Constitution and by statute, he
is empowered to review any decision of the parole authority
granting or denying parole to a person sentenced to an
indeterminate prison term based upon a conviction of murder.

4.   Respondent Veal is Acting Warden of the California
Medical Facility, where petitioner is currently housed.

III.

FACTUAL ALLEGATIONS

5.   Petitioner was convicted of first degree murder in the
death of a crime partner, Gary Hasnos.  Mr. Hasnos, along with
petitioner and another crime partner, Jeffrey Colbert, had
committed a robbery a couple of days earlier.  Mr. Colbert was an
accomplice in the murder of Mr. Hasnos.  He was originally
charged as a co-defendant in the case, but in the end testified
against petitioner in exchange for a reduced sentence.

6.   Petitioner was sentenced to concurrent terms of five and
seven years to life in prison.  He has been eligible for parole
since July 12, 1984.

7.   Petitioner was denied parole at some 15 hearings before
finally being found suitable for parole by the Board of Prison
Terms ("Board") in 2001.  (Effective July 1, 2005, the Board was

2

renamed the Board of Parole Hearings.)  The 2001 decision of the Board is attached hereto as Ex. A.

8.  The 2001 decision of the Board was reversed by Governor Davis in March 2002.  Ex. B.

9.  Petitioner was again found suitable by the Board (at his next parole consideration hearing) on September 14, 2004.  Ex. C (transcript of 2004 hearing).  The Board found that "Mr. Lewis has enhanced his ability to function within the law upon release...."  Id., p. 62: 18-19.  "He has also acquired skills through his developing disability."  Id., p. 63: 3-4.  "He has had a stable social history as exhibited by his [marriage] of 38 years."  Id., p. 63: 8-10.  "He has matured and grown over the years.  He has greater understanding of not only the commitment offense and has shown signs of remorse in that regard, but ... also understands the nature and magnitude of the offense and ... accepts responsibility for his criminal behavior."  Id., p. 63: 15-20.  The Board found that petitioner's "advanced age ... reduce[s] his probability of recidivism."  Id., p. 64: 6-8.  "He has realistic parole plans, which include placement in a structured environment where he will be able to transition back into society."  Id., p. 64: 8-11.  The panel noted that petitioner "has not received a 115 [rule violation report] since 1986, a very long period of disciplinary free behavior."  Id., p. 64: 20-21.  It also noted the 2004 psychiatric evaluation of Dr. Gary Collins that petitioner's "violence potential [is] low" (id., p. 65: 9-10) and that "if rehabilitation is possible for any felon[, petitioner] qualifies as a rehabilitated person."  Id., p. 65: 13-15.

10.   Pursuant to Cal. Code Regs., tit. 15, § 2282(b), the
Board established petitioner's term at 156 months (i.e.,
13 years), finding that the middle term of Category I-C was
appropriate. Ex. C, p. 66: 7-18.  The panel added 36 months for
a prior prison term and six months for a prior felony conviction,
bringing the total term to 198 months (i.e., 16½ years).  See
id., p. 67: 5-8.  The Board's decision became final on
January 13, 2005 (see id., p. 69: 24) -- at which time petitioner
had already been in prison over 27 years, i.e., 10½ years longer
than the total term established by the Board.

11.   The 2004 decision of the Board was reversed by Governor
Schwarzenegger in February 2005.  Ex. D.  The Governor, relying
in part on an affidavit "filed by the investigating inspector of
the San Francisco Police Department," id., p. 2 -- an affidavit
that was not part of the record before the Board (see Decl.
Ex. E) -- concluded that "the nature and magnitude of the murder
committed by Mr. Lewis and his significant criminal history
presently outweigh the positive factors tending to support his
parole."  Ex. D, p. 3.

12.   As a juvenile (in 1960), petitioner was charged with the
kidnapping and statutory rape of a teenaged girl.  The kidnapping
charge was later dropped and petitioner served 6 months in county
jail for the charge of statutory rape.  Petitioner has never been
convicted of kidnapping.  See Decl., Ex. E.

13.   Prior to the present incarceration, petitioner had spent
less than eight years of his life in custody.  Ibid.

14.   Petitioner is legally blind.  See Ex. C, p. 3: 1-16.

4

IV.

CONTENTIONS

A.

THE GOVERNOR'S REVERSAL OF THE BOARD'S GRANT OF PAROLE
VIOLATES PETITIONER'S "RIGHT TO HAVE HIS TERM FIXED AT A
NUMBER OF YEARS THAT IS PROPORTIONATE TO HIS OFFENSE."

B.

THE GOVERNOR'S DECISION TO REVERSE THE BOARD'S FINDING OF
PAROLE SUITABILITY WAS BASED UPON IMPROPER AND UNRELIABLE
EVIDENCE, IN VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS.

C.

THE GOVERNOR'S FAILURE TO CONSIDER CERTAIN FACTORS INDICATIVE
OF SUITABILITY, AS WELL AS HIS CONTINUED RELIANCE ON
IMMUTABLE FACTORS, VIOLATES DUE PROCESS.

V.

REQUEST FOR RELIEF

Petitioner is without remedy save for habeas corpus.

WHEREFORE, good cause appearing, he requests that the court:

1. Issue the writ of habeas corpus;

2. Issue an order to show cause;

3. Appoint counsel to represent petitioner's interests* and

grant appointed counsel leave to amend and/or supplement this

petition to add additional claims;

4. Hold an evidentiary hearing and/or conduct discovery (see

In re Scott, 29 Cal.4th 783, 814 (2003); Board of Prison Terms v.

Superior Court (Ngo), 31 Cal.Rptr.3d 70, 92 (2005)), as may be

necessary to resolve any disputed issues of fact; and

---

*Petitioner "desire[s] but cannot afford counsel."  See Rule
4.551(c)(2), California Rules of Court.

5. Grant any and all additional relief that the Court may deem necessary and appropriate in the interests of justice.

Dated: ___1/24/06___

Respectfully submitted,

*Charles W. Lewis*

Charles W. Lewis
Petitioner, pro se

## VERIFICATION

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Dated: ___1/24/06___        *Charles W. Lewis*

                        Charles W. Lewis

6

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

I.

THE GOVERNOR'S REVERSAL OF THE BOARD'S GRANT OF PAROLE
VIOLATES PETITIONER'S "RIGHT TO HAVE HIS TERM FIXED AT A
NUMBER OF YEARS THAT IS PROPORTIONATE TO HIS OFFENSE."

A year before petitioner committed his offense,[1] the
California Supreme Court flatly rejected "the express declaration
of the Authority [the predecessor of the Board] that in term
setting its function is 'to make the punishment fit the criminal
rather than the crime.'" In re Rodriguez, 14 Cal.3d 639, 650
(1975) (citation omitted). The Court held that such a policy was
contrary to the "constitutional command" that "punishment be
proportionate to the offense," id. "The Indeterminate Sentence
Law is not now being administered in a manner which offers
assurance that persons subject thereto will have their terms
fixed at a number of years proportionate to their individual
culpability, or, that their terms will be fixed with sufficient
promptness to permit any requested review of their
proportionality to be accomplished before the affected
individuals have been imprisoned beyond the constitutionally
permitted term." Id. (citing People v. Wingo, 14 Cal.3d 169
(1975)). "A failure to fix [a parole applicant's] term may be
just as violative of a defendant's right as an actual excessive
term...." Wingo, supra, 14 Cal.3d at 182.

_____

[1] Petitioner was arrested in April 1977 (see Ex. C, p. 18: 1-7),
when the state's parole system was governed by what was then known
as the Indeterminate Sentence Law ("ISL"). In this argument,
petitioner will cite to the body of case law interpreting the ISL.
Certainly, petitioner cannot be denied the benefit of the laws
actually in effect at the time of his offense, as those laws were
contemporaneously interpreted by the California Supreme Court.

7

Here, the Board found petitioner suitable for parole and assessed the term for his offense at 156 months (i.e., 13 years) pursuant to Cal. Code Regs., tit. 15, § 2282(b), finding that the middle term of Category I-C was appropriate. See Factual Allegations, ante, ¶10; Ex. C, p. 66: 7-18. The panel added 36 months for a prior prison term and six months for a prior felony conviction, bringing the total term to 198 months (i.e., 16½ years). Id.; Ex. C, p. 67: 5-8. The Board's decision became final on January 13, 2005 (id.; Ex. C, p. 69: 24) -- at which time petitioner had already been in prison over 27 years,[2] i.e., 10½ years longer[3] than the total term established by the Board.[4]

Since petitioner has "a right to have his term fixed at a number of years that is proportionate to his offense" (Rodriguez, supra, 14 Cal.3d at 652) and, moreover, since petitioner has already served more than a decade past that "proportionate" term as determined by the Board's own regulations, the Governor "abused [his] discretion" (Rodriguez, supra, 14 Cal.3d at 651) in reversing the Board's grant of parole here. (Clearly the Governor, no less than the Board, is bound by the "constitutional command" that "punishment be proportionate to the offense...." Rodriguez, supra, 14 Cal.3d at 650.)

---

[2] See Ex. C, p. 1: 8-9 (noting that petitioner "was received in CDC on November 18th, 1977").

[3] This does not take into account the fact that the Board granted petitioner 88 months of post-conviction credit for having been disciplinary-free for 22 years, reducing his total term to just 110 (i.e., 198 - 88) months. See Ex. C, p. 67: 8-13.

[4] More precisely, petitioner had been in prison for 326 months by the time the Board's decision establishing his total term at 198 months was final (in January 2005). Thus, petitioner was then already overdue for release by 128 months (i.e., 326 - 198), not taking into account the grant of post-conviction credits!!

II.

THE GOVERNOR'S DECISION TO REVERSE THE BOARD'S FINDING OF
PAROLE SUITABILITY WAS BASED UPON IMPROPER AND UNRELIABLE
EVIDENCE, IN VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS

The Governor's decision to reverse the Board's finding of
parole suitability impermissibly considered the fact that
"[a]lthough later acquitted," petitioner had been "additionally
tried for murder after stabbing a man at a party." Ex. D, p. 1.
The Penal Code expressly limits the parole authority to considering
only "the timing and gravity of current or past <u>convicted</u> offense
or offenses." Pen. Code, § 3041(b) (emphasis added). Similarly,
the Board's regulations provide that "Criminal charges not
resulting in conviction (charges which resulted in acquittal or
dismissal for any reason) shall not affect the parole date...."
Cal.Code Regs., tit. 15, § 2326(a). Indeed, only "[c]riminal
charges *resulting in conviction* ... may be considered as part of
the individual's criminal history...." <u>Id</u>., § 2326(b) (emphasis
added). Thus, there was no permissible basis for the Governor to
consider the fact of petitioner's acquittal here.

For identical reasons, it was inappropriate for the Governor
to make mention of a "kidnap" (Ex. D, p. 1) of which petitioner
was never convicted. <u>See</u> Factual Allegations, <u>ante</u>, ¶12; Decl.,
Ex. E. (The Governor asserts that petitioner was convicted of
"the kidnap and rape of a 17-year-old girl." Ex. D, p. 1. In
point of fact, petitioner was convicted only of *statutory* rape, a
crime for which he served six months in county jail. <u>See</u> Factual
Allegations, <u>ante</u>, ¶12; Decl. Ex. E.)

9

The Governor incorrectly asserts that petitioner, at the time of his arrest for the murder here, "had already spent more than half of his life in and out of the criminal-justice system." Ex. D, p. 2. In point of fact, prior to this offense, petitioner had spent less than eight of his (then) 34 years of life in custody. See Factual Allegations, ante, ¶13; Decl., Ex. E. (Petitioner is now 63 years old.)

The Governor bases his account of the murder on the testimony of Mr. Colbert, a co-defendant and accomplice to the crime. (See Factual Allegations, ante, ¶5; see also Ex. D, p. 2.) It is well-established that the testimony of an accomplice is "inherently untrustworthy because he or she usually testifies in the hope of favor or the expectation of immunity. In addition, an accomplice may try to shift blame to the defendant in an effort to minimize his or her own culpability." People v. Tobias, 25 Cal.4th 327, 331 (2001) (citations and internal quotation marks omitted). Indeed, Mr. Colbert had every incentive here to fashion his testimony in order to minimize his own culpability. (See Pen. Code, § 1111 (defining an accomplice as "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given") (emphasis added).) Thus, the testimony of an accomplice requires corroboration (see Pen. Code, § 1111; CALJIC Nos. 3.11, 3.12, and 3.13); absent adequate corroboration, such testimony is "inherently untrustworthy" (Tobias, supra, 25 Cal.4th at 331) and therefore unreliable. (See In re Scott, 15 Cal.Rptr.3d 32, 43 (2004) ("Scott I") (requiring information

10

considered by parole authority to be "reliable") (citing Cal.Code
Regs., tit. 15, § 2402(b)) and id. at 50 (requiring "reliable
factual underpinning"); In re Scott, 34 Cal.Rptr.3d 905, 917
(2005) ("Scott II") ("the evidence underlying the [parole
authority's] decision must have some indicia of reliability"
(citations and internal quotation marks omitted) (alteration in
original).) Because the testimony of accomplice Colbert was never
corroborated, it remains unreliable.

Additionally, to the extent that the Governor relied on an
affidavit "filed by the investigating inspector of the San
Francisco Police Department" (Ex. D, p. 2), that affidavit is
outside the record that was available to the Board (see Decl.,
Ex. E; Factual Allegations, ante, ¶11) and therefore was not
properly subject to review by the Governor. See Scott II, supra,
34 Cal.Rptr.3d at 927 ("'the Governor's constitutional authority
is limited to a review of the materials provided by the Board'")
(citations omitted) (italics in original).

Finally, the Governor asserted (incorrectly) that petitioner
"currently has no employment prospects." Ex. D, p. 2. Yet the
Governor had in his possession a letter dated November 19, 2004,
from Karen Shain, Administrative Director of Prisoners with
Children (Ex. F), an organization in San Francisco. In her letter
to the Governor, Ms. Shain indicated that "[u]pon [petitioner's]
release, my office is prepared to offer him a job and we truly
hope that he will accept." Ms. Shain added, "I know that
Mr. Lewis will be a terrific asset to our work." Regardless, the
reglations simply do not require that petitioner have a job offer

11

as a precondition to release on parole.  Indeed, with respect to
future plans, the regulations provide only that "[t]he prisoner
has made realistic plans for release or has developed marketable
skills that can be put to use upon release."  Cal.Code Regs.,
tit. 15, § 2281(d)(8).  Inasmuch as the Governor concedes that
petitioner has *both* "realistic plans" *and* "marketable skills" (see
Ex. D, p. 2), there no basis for the Governor's insistence here
on employment "immediately upon release," id.

Because the Governor relied on impermissible factors,
unreliable evidence and incorrect information, his decision to
reverse the Board's finding of suitability here must be reversed.

III.

THE GOVERNOR'S FAILURE TO CONSIDER CERTAIN FACTORS INDICATIVE
OF SUITABILITY, AS WELL AS HIS CONTINUED RELIANCE ON
IMMUTABLE FACTORS, VIOLATES DUE PROCESS.

A

The regulations "require that '*[a]ll* relevant, reliable
information available to the panel *shall be considered* in
determining suitability for parole.'"  Scott I, supra,
15 Cal.Rptr.3d at 51 (citing Cal.Code Regs., tit. 15, § 2402(b))[5]
(italics in Scott I).  See also Scott II, supra, 34 Cal.Rptr.3d at
921 ("the Governor is required to address the same factors the
Board is required to consider") (citing Cal. Const., art. V,
§ 8(b)).  Here, the Governor failed to consider petitioner's age
(Cal.Code Regs., tit. 15, § 2281(d)(7)) and his stable social
history (id., § 2281(d)(2)) as factors tending to show his

[5]As a technical matter, the cited regulation is applicable to
murders committed only on or after November 8, 1978.  See Cal.Code
Regs., tit. 15, § 2400.  Nonetheless, the same rule applies to
petitioner, whose offense occurred in 1976.  See id., § 2281(b).

12

suitability for release on parole; as in <u>Scott II</u>, this failure "is arbitrary and capricious in the sense that [the Governor] failed to apply the controlling legal principles to the facts before him." 34 Cal.Rptr.3d at 921.

The Governor, like the Board, is required to consider whether "[t]he prisoner's present age reduces the probability of recidivism." Cal.Code Regs., tit. 15, § 2281(d)(7). The Board itself noted petitioner's "advanced age." <u>See</u> Factual Allegations, <u>ante</u>, ¶9. Significantly, the Board counted this as a factor tending to show petitioner's suitability. <u>See</u> transcript, Ex. C, p. 64: 5-8 ("He also has advanced age. Although he's young in years, 62, ..., <u>that does count as advanced age in terms of recidivism</u>.") (emphasis added). By contrast, the Governor, while he did "recognize" petitioner's age (<u>see</u> Ex. D, p. 2), did <u>not</u> count this as "a factor tipping the scales either in favor of or against his parole suitability at this time...." <u>Ibid</u>. <u>Cf</u>. <u>In re Ramirez</u>, 94 Cal.App.4th 549, 571-72 (2001) (dismissing Board's "commend[ation]" of petitioner's in-custody behavior as falling short of the requirement "to reflect consideration of [his] institutional behavior *as a circumstance tending to show his suitability for parole*") (italics in original).

The Governor is also required to consider whether "[t]he prisoner has experienced reasonably stable relationsips with others." Cal.Code Regs., tit. 15, § 2281(d)(2). The Board itself *did* consider this factor, finding that petitioner "has had a stable social history as exhibited by his [marriage] of 38 years."

13

Ex. C, p. 63: 8-10;[6] see Factual Allegations, ante, ¶9. The Governor entirely ignored this factor.[7] This is "'yet another indication of an arbitrary and capricious determination.'" Scott II, supra, 34 Cal.Rptr.3d at 51 (quoting Ramirez, supra, 94 Cal.App.4th at 572).

B

"[A] determination of unsuitability is simply shorthand for a finding that a prisoner currently would pose an unreasonable risk of danger if released at this time." In re Smith, 114 Cal.App.4th 343, 370 (2003) (citing Cal.Code Regs., tit. 15, § 2402(a))[8] (emphasis added). Indeed, the Governor, relying solely on the nature of petitioner's commitment offense and his prior criminal history,[9] has stated that he believed that petitioner's release from prison "would pose an unreasonable risk of danger to society at this time." Ex. D, p. 3 (emphasis added). A prisoner's

---

[6]The Board also noted that it was "very aware of the fact that [petitioner] had an unstable social history to the extent that he was previously a drug user and had prior criminal history...." Id., p. 63: 10-13 (emphasis added). While an "[u]nstable [s]ocial [h]istory" may be considered as a factor tending to show unsuitability for parole (see Cal.Code Regs., tit. 15, § 2281(c)(3)), it is not one of the "factors indicative of unsuitability [that] a prisoner cannot change...." See Scott II, supra, 34 Cal.Rptr.3d at 919.

[7]The Governor did, however, make passing reference to the fact that petitioner "may at some point be eligible to collect his deceased wife's Social Security benefits." Ex. D, p. 2.

[8]The cited rule is duplicated at Cal.Code Regs., tit. 15, § 2281(a). The latter rule applies to petitioner's case. See fn. 5, ante.

[9]In its October 12, 2005, Order denying relief below, the Superior Court found that the Governor's reliance on "the gravity of the commitment crime" and petitioner's "criminal history" was supported by "some evidence." See Order (attached hereto in response to question 13.a.(4) of Form MC-275), Section III, pp. 3-4.

14

commitment offense and criminal history are "two factors
indicative of unsuitability [that] a prisoner cannot change...."
Scott II, supra, 34 Cal.Rptr.3d at 919. Accordingly, the
Governor's statement regarding petitioner's unsuitability "at this
time" "could be repeated annually until [petitioner] dies or is
rendered helpless by the infirmities of sickness or age." Id.,
fn. 8 at 919-20. The Court of Appeal has cast doubt on the
fairness of such continued reliance on "immutable" factors (id. at
920 (citing Smith, supra, 114 Cal.App.4th at 372)), finding that,
in such circumstances, denial of release "warrants especially
close scrutiny." Ibid. Petitioner notes that he has now been
incarcerated for nearly three decades (see Ex. C, p. 1: 8-9); that
he is of "advanced age" (id., p. 64: 5; Factual Allegations, ante,
¶9) and legally blind (id., p. 3: 4-5; Factual Allegations, ante,
¶14); that his violence potential is currently considered "low"
(id., p. 65: 9-10; Factual Allegations, ante, ¶9); that "he has
not received a 115 [rule violation report] since 1986, a very long
period of disciplinary free behavior" (id., p. 64: 20-21; Factual
Allegations, ante, ¶9); and that the most recent psychiatric
evaluation of petitioner opined that "if rehabilitation is
possible for any felon[, petitioner] qualifies as a rehabilitated
person." Id., p. 65: 13-15; Factual Allegations, ante, ¶9.[10]   In
light of these facts (see also fn. 9, ante), the Governor's
continued reliance on the immutable facts of petitioner's
commitment offense and his prior criminal history "'runs contrary

_____

[10]Petitioner also notes that, at the time the Board's decision
here became final, he had already been incarcerated 10½ years
longer than the total term established for him by the Board. See
Factual Allegations, ante, ¶10; see also fns. 3 and 4, ante.

15

to the rehabilitative goals espoused by the prison system....'" Scott II, supra, 34 Cal.Rptr.3d at 920 (quoting Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003)). Indeed, because "the predictive value" of these immutable facts is now "very questionable" (id., citing Irons v. Warden of CSP-Solano, 358 F.Supp.2d 936, 947, fn. 2 (E.D. Cal. 2005)), at best,[11] the Governor's decision here violates petitioner's right to due process.

                            CONCLUSION

     Petitioner's continued incarceration, more than a decade past the term set by the Board for his offense, infringes upon petitioner's "right to have his term fixed at a number of years that is proportionate to his offense." Rodriguez, supra, 14 Cal.3d at 652.

     Moreover, because the Governor relied on impermissible factors, unreliable evidence and incorrect information, his decision to reverse the Board's finding of parole suitability here must be overturned.

     Finally, because the Governor failed to consider two factors that he is "required to address" (Scott II, supra, 34 Cal.Rptr.3d at 921), and because the only evidence of petitioner's unsuitability is derived from the "immutable" facts of his offense and prior criminal history (see id. at 920-21), the Governor's decision here reversing the Board's finding of parole suitability violates petitioner's right to due process of law.

---

[11] See Scott II, supra, 34 Cal.Rptr.3d, fn. 9 at 920 (noting both that predictions of future dangerousness are "exceedingly unreliable" and that they tend to "'predict acts of violence which

                              16

WHEREFORE, good cause appearing, petitioner prays this Court will grant the petition for writ of habeas corpus or, in the alternative, issue an order to show cause, appoint counsel, permit discovery and order any other relief (including an evidentiary hearing) it may deem necessary and appropriate in the interests of justice.

Dated: ___1|24|06___

Respectfully submitted,

*Charles W. Lewis*

Charles W. Lewis
Petitioner, pro se

_____

will not in fact take place ("false positives"), thus branding as "dangerous" many persons who are in reality totally harmless.'") (quoting People v. Burnick, 14 Cal.3d 306, 327 (1975) (internal citation omitted)).

# EXHIBIT H

S142007

# IN THE SUPREME COURT OF CALIFORNIA

### En Banc

---

In re CHARLES W. LEWIS on Habeas Corpus

---

Petition for writ of habeas corpus is DENIED.

SUPREME COURT
**FILED**

FEB - 7 2007

Frederick K. Ohlrich Clerk

DEPUTY

GEORGE
Chief Justice

MC-275

Name   Charles W. Lewis

Address   California Medical Facility

P. O. Box 2500

Vacaville, CA 95696-2500

CDC or ID Number   B-83314

SUPREME COURT
F I L E D

MAR 20 2006

Frederick K. Ohlrich Clerk

DEPUTY

IN THE SUPREME COURT

OF THE STATE OF CALIFORNIA
(Court)

CHARLES W. LEWIS
Petitioner
vs.
ARNOLD SCHWARZENEGGER, Governor, and
M. VEAL, Acting Warden
Respondent s

PETITION FOR WRIT OF HABEAS CORPUS

No.   S142007
(To be supplied by the Clerk of the Court)

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

**This petition concerns:**

| | | | |
|---|---|---|---|
| ☐ A conviction | | ☐ Parole | |
| ☐ A sentence | | ☐ Credits | |
| ☐ Jail or prison conditions | | ☐ Prison discipline | |
| ☒ Other *(specify)*: | gubernatorial reversal of finding of parole suitability by parole board | | |

1. **Your name:** Charles W. Lewis

2. **Where are you incarcerated?** California Medical Facility, Vacaville, California

3. **Why are you in custody?** ☒ Criminal Conviction    ☐ Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

  a.  **State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").**

      Murder

  b.  **Penal or other code sections:** Penal Code § 187

  c.  **Name and location of sentencing or committing court:** Superior Court of California, County of San Francisco

  d.  **Case number:** 95226

  e.  **Date convicted or committed:** Oct. 25, 1977

  f.  **Date sentenced:** Oct. 25, 1977

  g.  **Length of sentence:** seven (7) years to life

  h.  **When do you expect to be released?** upon finding of parole suitability

  i.  **Were you represented by counsel in the trial court?** ☒ Yes. ☐ No. **If yes, state the attorney's name and address:**

      Robert Nicco

4. **What was the LAST plea you entered?** *(check one)*

  ☒ Not guilty    ☐ Guilty    ☐ Nolo Contendere    ☐ Other:

5. **If you pleaded not guilty, what kind of trial did you have?**

  ☒ Jury    ☐ Judge without a jury    ☐ Submitted on transcript    ☐ Awaiting trial

6. GROUNDS FOR RELIEF
**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

The Governor's reversal of the Board's grant of parole violates petitioner's "right

to have his term fixed at a number of years that is proportionate to his offense."

_____

_____

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: who did exactly what to violate your rights at what time *(when)* or place *(where). (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

See attached.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

See attached.

_____

_____

_____

_____

7. **Ground 2 or Ground _____** (*if applicable*):

The Governor's decision to reverse the Board's finding of parole suitability

was based upon improper and unreliable evidence, in violation of petitioner's

right to due process.

a. Supporting facts:

See attached.

b. Supporting cases, rules, or other authority:

See attached.

8.  Did you appeal from the conviction, sentence, or commitment? ☐ Yes. ☐ No.   If yes, give the following information:

a.  Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"): _____

_____

b.  Result: _____    c.  Date of decision: _____

d.  Case number or citation of opinion, if known: _____

e.  Issues raised:   (1) _____

(2) _____

(3) _____

f.  Were you represented by counsel on appeal? ☐ Yes. ☐ No.   If yes, state the attorney's name and address, if known:

_____

9.  Did you seek review in the California Supreme Court? ☐ Yes. ☐ No.   If yes, give the following information:

a.  Result: _____    b.  Date of decision: _____

c.  Case number or citation of opinion, if known: _____

d.  Issues raised:   (1) _____

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

There was no claim until the Governor reversed the Board's finding of parole

suitability.

11. Administrative Review:

a.  If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review.

There are no available administrative remedies following a gubernatorial

reversal of a Board finding of parole suitability.

_____

_____

_____

_____

_____

b.  Did you seek the highest level of administrative review available? ☒ Yes. ☐ No.

*Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. January 1, 1999]          **PETITION FOR WRIT OF HABEAS CORPUS**          Page five of six

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?  [X] Yes. If yes, continue with number 13.  [ ] No. If no, skip to number 15.

13. a. (1) Name of court:  Superior Court, San Francisco County

   (2) Nature of proceeding (for example, "habeas corpus petition"):  habeas corpus petition

   (3) Issues raised: (a) _____

       (b) _____

   (4) Result (Attach order or explain why unavailable):  petition denied (Ex. G)

   (5) Date of decision:  Oct. 12, 2005

 b. (1) Name of court:  Court of Appeal, First Appellate District

   (2) Nature of proceeding:  habeas corpus petition

   (3) Issues raised: (a)  same as grounds 1, 2 and 3 here

       (b) _____

   (4) Result (Attach order or explain why unavailable):  petition denied (Ex. H)

   (5) Date of decision:  Feb. 2, 2006

 c.  For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

   No hearing has been held.

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
   There has been no delay. Petitioner is legally blind and has difficulty preparing written documents. He is also ignorant of the law. The Court of Appeal denied his petition on Feb. 2, 2006. Petitioner proceeded diligently thereafter.

16. Are you presently represented by counsel?  [ ] Yes.  [XX] No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court?  [ ] Yes.  [ ] No.  If yes, explain:

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

   N/A

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:  3-10-06                              X Charles A. Lewis
                                               (SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]       **PETITION FOR WRIT OF HABEAS CORPUS**       Page six of six

## DECLARATION OF MAILING

I, _CHARLES W. LEWIS_____, declare:

I am a citizen of the United States, over the age of
eighteen years and not a party to the within action;

My legal mailing address is the California Medical Facility,
P.O. Box 2500, Vacaville, CA 95696-2500;

That, on _MARCH 11, 2006_, I served a copy of the
foregoing _Signed Writ of Habeas Corpus_____

by placing said copy in the United States mail at Vacaville,
California, County of Solano, addressed as follows:

_SUPREME COURT OF CALIFORNIA_
_OFFICE OF THE CLERK_
_350 McALLISTER STREET_
_SAN FRANCISCO, CA 94102_

I declare under penalty of perjury that the foregoing is
true and correct.

EXECUTED at Vacaville, California on _3-11-06_, _____.

_CHRISTOPHER WILLIAMS_                    _Christopher Williams_
**Declarant's Printed Name**              **Declarant's Signature**

Charles W. Lewis
B-83314
California Medical Facility
P. O. Box 2500, U-349
Vacaville, CA 95696-2500

Petitioner, pro se

IN THE SUPREME COURT

OF THE STATE OF CALIFORNIA

| | |
|---|---|
| CHARLES W. LEWIS, ) | Case No. _____ |
| ) | |
| Petitioner, ) | PETITION FOR WRIT OF HABEAS |
| ) | CORPUS WITH MEMORANDUM OF |
| v. ) | POINTS AND AUTHORITIES IN |
| ) | SUPPORT THEREOF |
| ARNOLD SCHWARZENEGGER, ) | |
| Governor of California, and ) | |
| M. VEAL, Acting Warden, ) | |
| ) | |
| Respondents. ) | |

I.

INTRODUCTION

1.  Petitioner, an indeterminately sentenced prisoner who is legally blind and has twice now (at consecutive parole consideration hearings) been deemed suitable for release on parole, herein challenges the February 8, 2005, decision of the Governor to reverse the parole board's latest finding that petitioner, having been incarcerated now for nearly three decades on a sentence of seven years to life, would in fact not pose an unreasonable risk of danger to society if released from prison at this time.

II.

PARTIES

2.  Petitioner is a state prisoner, here proceeding pro se, who was received on November 18, 1977, by the California

1

Department of Corrections ("CDC"), now the Department of

Corrections and Rehabilitation, to serve concurrent sentences of

five and seven years to life in prison following convictions of

first degree robbery and first degree murder in Alameda County

and San Francisco County, respectively.

    3.  Respondent Schwarzenegger is Governor of the State of

California.  Under the California Constitution and by statute, he

is empowered to review any decision of the parole authority

granting or denying parole to a person sentenced to an

indeterminate prison term based upon a conviction of murder.

    4.  Respondent Veal is Acting Warden of the California

Medical Facility, where petitioner is currently housed.

III.

FACTUAL ALLEGATIONS

    5.  Petitioner was convicted of first degree murder in the

death of a crime partner, Gary Hasnos.  Mr. Hasnos, along with

petitioner and another crime partner, Jeffrey Colbert, had

committed a robbery a couple of days earlier.  Mr. Colbert was an

accomplice in the murder of Mr. Hasnos.  He was originally

charged as a co-defendant in the case, but in the end testified

against petitioner in exchange for a reduced sentence.

    6.  Petitioner was sentenced to concurrent terms of five and

seven years to life in prison.  He has been eligible for parole

since July 12, 1984.

    7.  Petitioner was denied parole at some 15 hearings before

finally being found suitable for parole by the Board of Prison

Terms ("Board") in 2001.  (Effective July 1, 2005, the Board was

2

renamed the Board of Parole Hearings.)  The 2001 decision of the
Board is attached hereto as Ex. A.

   8.  The 2001 decision of the Board was reversed by Governor
Davis in March 2002.  Ex. B.

   9.  Petitioner was again found suitable by the Board (at his
next parole consideration hearing) on September 14, 2004.  Ex. C
(transcript of 2004 hearing).  The Board found that "Mr. Lewis has
enhanced his ability to function within the law upon release...."
Id., p. 62: 18-19.  "He has also acquired skills through his
developing disability."  Id., p. 63: 3-4.  "He has had a stable
social history as exhibited by his [marriage] of 38 years."  Id.,
p. 63: 8-10.  "He has matured and grown over the years.  He has
greater understanding of not only the commitment offense and has
shown signs of remorse in that regard, but ... also understands
the nature and magnitude of the offense and ... accepts
responsibility for his criminal behavior."  Id., p. 63: 15-20.
The Board found that petitioner's "advanced age ... reduce[s] his
probability of recidivism."  Id., p. 64: 6-8.  "He has realistic
parole plans, which include placement in a structured environment
where he will be able to transition back into society."  Id.,
p. 64: 8-11.  The panel noted that petitioner "has not received a
115 [rule violation report] since 1986, a very long period of
disciplinary free behavior."  Id., p. 64: 20-21.  It also noted
the 2004 psychiatric evaluation of Dr. Gary Collins that
petitioner's "violence potential [is] low" (id., p. 65: 9-10) and
that "if rehabilitation is possible for any felon[, petitioner]
qualifies as a rehabilitated person."  Id., p. 65: 13-15.

10.  Pursuant to Cal. Code Regs., tit. 15, § 2282(b), the Board established petitioner's term at 156 months (i.e., 13 years), finding that the middle term of Category I-C was appropriate.  Ex. C, p. 66: 7-18.  The panel added 36 months for a prior prison term and six months for a prior felony conviction, bringing the total term to 198 months (i.e., 16½ years).  See id., p. 67: 5-8.  The Board's decision became final on January 13, 2005 (see id., p. 69: 24) -- at which time petitioner had already been in prison over 27 years, i.e., 10½ years longer than the total term established by the Board.

11.  The 2004 decision of the Board was reversed by Governor Schwarzenegger in February 2005.  Ex. D.  The Governor, relying in part on an affidavit "filed by the investigating inspector of the San Francisco Police Department," id., p. 2 -- an affidavit that was not part of the record before the Board (see Decl. Ex. E) -- concluded that "the nature and magnitude of the murder committed by Mr. Lewis and his significant criminal history presently outweigh the positive factors tending to support his parole."  Ex. D, p. 3.

12.  As a juvenile (in 1960), petitioner was charged with the kidnapping and statutory rape of a teenaged girl.  The kidnapping charge was later dropped and petitioner served 6 months in county jail for the charge of statutory rape.  Petitioner has never been convicted of kidnapping.  See Decl., Ex. E.

13.  Prior to the present incarceration, petitioner had spent less than eight years of his life in custody.  Ibid.

14.  Petitioner is legally blind.  See Ex. C, p. 3: 1-16.

4

15.    In its October 8, 2005, decision denying petitioner's petition for writ of habeas corpus (Ex. G here), the Superior Court misconstrued the record here when it found that petitioner had admitted that "in conjunction with an accomplice, he kicked and beat Mr. Hasznos to death" and that this admission "provided the Governor with some evidence that the offense was carried out in a dispassionate and calculated manner." Ex. G, p. 4. Petitioner has never made such an admission.  The Governor had (correctly) found that "Mr. Lewis admitted at his 2001 parole hearing to kicking and beating Mr. Hasznos.  His claim over the years has been that the fight ultimately moved from indoors to outdoors, and once outdoors, Mr. Colbert alone beat and at some point stabbed Mr. Hasznos.  He told the 2001 Board that he was inside during this time and by the time he went outside, Mr. Hasznos appeared dead." Ex. D, p. 2.  Because petitioner, contrary to the Superior Court's finding, did not, and does not, admit that "he kicked and beat Mr. Hasznos to death" (Ex. G, p. 4), such an admission could not constitute "some evidence" justifying the denial of parole here.

IV.

CONTENTIONS

A.

THE GOVERNOR'S REVERSAL OF THE BOARD'S GRANT OF PAROLE VIOLATES PETITIONER'S "RIGHT TO HAVE HIS TERM FIXED AT A NUMBER OF YEARS THAT IS PROPORTIONATE TO HIS OFFENSE."

B.

THE GOVERNOR'S DECISION TO REVERSE THE BOARD'S FINDING OF PAROLE SUITABILITY WAS BASED UPON IMPROPER AND UNRELIABLE EVIDENCE, IN VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS.

5

C.

THE GOVERNOR'S FAILURE TO CONSIDER CERTAIN FACTORS INDICATIVE OF SUITABILITY, AS WELL AS HIS CONTINUED RELIANCE ON IMMUTABLE FACTORS, VIOLATES DUE PROCESS.

D.

THE FINDING OF PAROLE UNSUITABILITY VIOLATES PETITIONER'S FEDERAL DUE PROCESS RIGHTS.

V.

REQUEST FOR RELIEF

Petitioner is without remedy save for habeas corpus.

WHEREFORE, good cause appearing, he requests that the court:

1. Issue the writ of habeas corpus;

2. Issue an order to show cause;

3. Appoint counsel to represent petitioner's interests* and grant appointed counsel leave to amend and/or supplement this petition to add additional claims;

4. Hold an evidentiary hearing and/or conduct discovery (see In re Scott, 29 Cal.4th 783, 814 (2003); Board of Prison Terms v. Superior Court (Ngo), 31 Cal.Rptr.3d 70, 92 (2005)), as may be necessary to resolve any disputed issues of fact; and

5. Grant any and all additional relief that the Court may deem necessary and appropriate in the interests of justice.

Dated: 2-21-06

Respectfully submitted,

*Charles W. Lewis*

Charles W. Lewis
Petitioner, pro se

---

*Petitioner "desire[s] but cannot afford counsel." See Rule 4.551(c)(2), California Rules of Court.

6

## VERIFICATION

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Dated: 2-21-06

*Charles W. Lewis*

Charles W. Lewis

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

I.

THE GOVERNOR'S REVERSAL OF THE BOARD'S GRANT OF PAROLE
VIOLATES PETITIONER'S "RIGHT TO HAVE HIS TERM FIXED AT A
NUMBER OF YEARS THAT IS PROPORTIONATE TO HIS OFFENSE."

A year before petitioner committed his offense,[1] the
California Supreme Court flatly rejected "the express declaration
of the Authority [the predecessor of the Board] that in term
setting its function is 'to make the punishment fit the criminal
rather than the crime.'" In re Rodriguez, 14 Cal.3d 639, 650
(1975) (citation omitted). The Court held that such a policy was
contrary to the "constitutional command" that "punishment be
proportionate to the offense," id. "The Indeterminate Sentence
Law is not now being administered in a manner which offers
assurance that persons subject thereto will have their terms
fixed at a number of years proportionate to their individual
culpability, or, that their terms will be fixed with sufficient
promptness to permit any requested review of their
proportionality to be accomplished before the affected
individuals have been imprisoned beyond the constitutionally
permitted term." Id. (citing People v. Wingo, 14 Cal.3d 169
(1975)). "A failure to fix [a parole applicant's] term may be
just as violative of a defendant's right as an actual excessive
term...." Wingo, supra, 14 Cal.3d at 182.

---

[1] Petitioner was arrested in April 1977 (see Ex. C, p. 18: 1-7),
when the state's parole system was governed by what was then known
as the Indeterminate Sentence Law ("ISL"). In *this* argument,
petitioner will cite to the body of case law interpreting the ISL.
Certainly, petitioner cannot be denied the benefit of the laws
*actually in effect at the time of his offense,* as those laws were
*contemporaneously interpreted by the California Supreme Court.*

Here, the Board found petitioner suitable for parole and assessed the term for his offense at 156 months (i.e., 13 years) pursuant to Cal. Code Regs., tit. 15, § 2282(b), finding that the middle term of Category I-C was appropriate. See Factual Allegations, ante, ¶10; Ex. C, p. 66: 7-18. The panel added 36 months for a prior prison term and six months for a prior felony conviction, bringing the total term to 198 months (i.e., 16½ years). Id.; Ex. C, p. 67: 5-8. The Board's decision became final on January 13, 2005 (id.; Ex. C, p. 69: 24) -- at which time petitioner had already been in prison over 27 years,[2] i.e., 10½ years longer[3] than the total term established by the Board.[4]

Since petitioner has "a right to have his term fixed at a number of years that is proportionate to his offense" (Rodriguez, supra, 14 Cal.3d at 652) and, moreover, since petitioner has already served more than a decade past that "proportionate" term as determined by the Board's own regulations, the Governor "abused [his] discretion" (Rodriguez, supra, 14 Cal.3d at 651) in reversing the Board's grant of parole here. (Clearly the Governor, no less than the Board, is bound by the "constitutional command" that "punishment be proportionate to the offense...." Rodriguez, supra, 14 Cal.3d at 650.)

---

[2] See Ex. C, p. 1: 8-9 (noting that petitioner "was received in CDC on November 18th, 1977").

[3] This does not take into account the fact that the Board granted petitioner 88 months of post-conviction credit for having been disciplinary-free for 22 years, reducing his total term to just 110 (i.e., 198 - 88) months. See Ex. C, p. 67: 8-13.

[4] More precisely, petitioner had been in prison for 326 months by the time the Board's decision establishing his total term at 198 months was final (in January 2005). Thus, petitioner was then already overdue for release by 128 months (i.e., 326 - 198), not taking into account the grant of post-conviction credits!!

8

II.

THE GOVERNOR'S DECISION TO REVERSE THE BOARD'S FINDING OF
PAROLE SUITABILITY WAS BASED UPON IMPROPER AND UNRELIABLE
EVIDENCE, IN VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS

The Governor's decision to reverse the Board's finding of
parole suitability impermissibly considered the fact that
"[a]lthough later acquitted," petitioner had been "additionally
tried for murder after stabbing a man at a party." Ex. D, p. 1.
The Penal Code expressly limits the parole authority to considering
only "the timing and gravity of current or past convicted offense
or offenses." Pen. Code, § 3041(b) (emphasis added). Similarly,
the Board's regulations provide that "Criminal charges not
resulting in conviction (charges which resulted in acquittal or
dismissal for any reason) shall not affect the parole date...."
Cal.Code Regs., tit. 15, § 2326(a). Indeed, only "[c]riminal
charges *resulting in conviction* ... may be considered as part of
the individual's criminal history...." Id., § 2326(b) (emphasis
added). Thus, there was no permissible basis for the Governor to
consider the fact of petitioner's acquittal here.

For identical reasons, it was inappropriate for the Governor
to make mention of a "kidnap" (Ex. D, p. 1) of which petitioner
was never convicted. See Factual Allegations, ante, ¶12; Decl.,
Ex. E. (The Governor asserts that petitioner was convicted of
"the kidnap and rape of a 17-year-old girl." Ex. D, p. 1. In
point of fact, petitioner was convicted only of *statutory* rape, a
crime for which he served six months in county jail. See Factual
Allegations, ante, ¶12; Decl. Ex. E.)

9

The Governor incorrectly asserts that petitioner, at the
time of his arrest for the murder here, "had already spent more
than half of his life in and out of the criminal-justice system."
Ex. D, p. 2. In point of fact, prior to this offense, petitioner
had spent less than eight of his (then) 34 years of life in
custody. See Factual Allegations, ante, ¶13; Decl., Ex. E.
(Petitioner is now 63 years old.)

The Governor bases his account of the murder on the testimony
of Mr. Colbert, a co-defendant and accomplice to the crime. (See
Factual Allegations, ante, ¶5; see also Ex. D, p. 2.) It is well-
established that the testimony of an accomplice is "inherently
untrustworthy because he or she usually testifies in the hope of
favor or the expectation of immunity. In addition, an accomplice
may try to shift blame to the defendant in an effort to minimize
his or her own culpability." People v. Tobias, 25 Cal.4th 327,
331 (2001) (citations and internal quotation marks omitted).
Indeed, Mr. Colbert had every incentive here to fashion his
testimony in order to minimize his own culpability. (See Pen.
Code, § 1111 (defining an accomplice as "one who is liable to
prosecution *for the identical offense* charged against the
defendant on trial in the cause in which the testimony of the
accomplice is given") (emphasis added).) Thus, the testimony of
an accomplice requires corroboration (see Pen. Code, § 1111;
CALJIC Nos. 3.11, 3.12, and 3.13); absent adequate corroboration,
such testimony is "inherently untrustworthy" (Tobias, supra,
25 Cal.4th at 331) and therefore unreliable. (See In re Scott,
15 Cal.Rptr.3d 32, 43 (2004) ("Scott I") (requiring information

considered by parole authority to be "reliable") (citing Cal.Code
Regs., tit. 15, § 2402(b)) and id. at 50 (requiring "reliable
factual underpinning"); In re Scott, 34 Cal.Rptr.3d 905, 917
(2005) ("Scott II") ("the evidence underlying the [parole
authority's] decision must have some indicia of reliability"
(citations and internal quotation marks omitted) (alteration in
original).) Because the testimony of accomplice Colbert was never
corroborated, it remains unreliable.

Additionally, to the extent that the Governor relied on an
affidavit "filed by the investigating inspector of the San
Francisco Police Department" (Ex. D, p. 2), that affidavit is
outside the record that was available to the Board (see Decl.,
Ex. E; Factual Allegations, ante, ¶11) and therefore was not
properly subject to review by the Governor. See Scott II, supra,
34 Cal.Rptr.3d at 927 ("'the Governor's constitutional authority
is limited to a review of the materials provided by the Board'")
(citations omitted) (italics in original).

Finally, the Governor asserted (incorrectly) that petitioner
"currently has no employment prospects." Ex. D, p. 2. Yet the
Governor had in his possession a letter dated November 19, 2004,
from Karen Shain, Administrative Director of Prisoners with
Children (Ex. F), an organization in San Francisco. In her letter
to the Governor, Ms. Shain indicated that "[u]pon [petitioner's]
release, my office is prepared to offer him a job and we truly
hope that he will accept." Ms. Shain added, "I know that
Mr. Lewis will be a terrific asset to our work." Regardless, the
reglations simply do not require that petitioner have a job offer

11

as a precondition to release on parole.  Indeed, with respect to
future plans, the regulations provide only that "[t]he prisoner
has made realistic plans for release or has developed marketable
skills that can be put to use upon release." Cal.Code Regs.,
tit. 15, § 2281(d)(8).  Inasmuch as the Governor concedes that
petitioner has *both* "realistic plans" *and* "marketable skills" (see
Ex. D, p. 2), there is no basis for the Governor's insistence here
on employment "immediately upon release," id.

Because the Governor relied on impermissible factors,
unreliable evidence and incorrect information, his decision to
reverse the Board's finding of suitability here must be reversed.

### III.

THE GOVERNOR'S FAILURE TO CONSIDER CERTAIN FACTORS INDICATIVE
OF SUITABILITY, AS WELL AS HIS CONTINUED RELIANCE ON
IMMUTABLE FACTORS, VIOLATES DUE PROCESS.

### A

The regulations "require that '*[a]ll* relevant, reliable
information available to the panel *shall be considered* in
determining suitability for parole.'" Scott I, supra,
15 Cal.Rptr.3d at 51 (citing Cal.Code Regs., tit. 15, § 2402(b))[5]
(italics in Scott I).  See also Scott II, supra, 34 Cal.Rptr.3d at
921 ("the Governor is required to address the same factors the
Board is required to consider") (citing Cal. Const., art. V,
§ 8(b)).  Here, the Governor failed to consider petitioner's age
(Cal.Code Regs., tit. 15, § 2281(d)(7)) and his stable social
history (id., § 2281(d)(2)) as factors tending to show his

---

[5]As a technical matter, the cited regulation is applicable to
murders committed only on or after November 8, 1978.  See Cal.Code
Regs., tit. 15, § 2400.  Nonetheless, the same rule applies to
petitioner, whose offense occurred in 1976.  See id., § 2281(b).

12

suitability for release on parole; as in <u>Scott II</u>, this failure
"is arbitrary and capricious in the sense that [the Governor]
failed to apply the controlling legal principles to the facts
before him." 34 Cal.Rptr.3d at 921.

The Governor, like the Board, is required to consider whether
"[t]he prisoner's present age reduces the probability of
recidivism." Cal.Code Regs., tit. 15, § 2281(d)(7). The Board
itself noted petitioner's "advanced age." <u>See</u> Factual
Allegations, <u>ante</u>, ¶9. Significantly, the Board counted this as
a factor tending to show petitioner's suitability. <u>See</u>
transcript, Ex. C, p. 64: 5-8 ("He also has advanced age.
Although he's young in years, 62, ..., <u>that does count as advanced
age in terms of recidivism</u>.") (emphasis added). By contrast, the
Governor, while he did "recognize" petitioner's age (<u>see</u> Ex. D,
p. 2), did <u>not</u> count this as "a factor tipping the scales either
in favor of or against his parole suitability at this time...."
<u>Ibid</u>. <u>Cf</u>. <u>In re Ramirez</u>, 94 Cal.App.4th 549, 571-72 (2001)
(dismissing Board's "commend[ation]" of petitioner's in-custody
behavior as falling short of the requirement "to reflect
consideration of [his] institutional behavior *as a circumstance
tending to show his suitability for parole*") (italics in
original).

The Governor is also required to consider whether "[t]he
prisoner has experienced reasonably stable relationsips with
others." Cal.Code Regs., tit. 15, § 2281(d)(2). The Board itself
*did* consider this factor, finding that petitioner "has had a
stable social history as exhibited by his [marriage] of 38 years."

Ex. C, p. 63: 8-10;[6] see Factual Allegations, ante, ¶9. The
Governor entirely ignored this factor.[7] This is "'yet another
indication of an arbitrary and capricious determination.'"
Scott II, supra, 34 Cal.Rptr.3d at 51 (quoting Ramirez, supra,
94 Cal.App.4th at 572).

B

"[A] determination of unsuitability is simply shorthand for a
finding that a prisoner currently would pose an unreasonable risk
of danger if released at this time." In re Smith, 114 Cal.App.4th
343, 370 (2003) (citing Cal.Code Regs., tit. 15, § 2402(a))[8]
(emphasis added). Indeed, the Governor, relying solely on the
nature of petitioner's commitment offense and his prior criminal
history,[9] has stated that he believed that petitioner's release
from prison "would pose an unreasonable risk of danger to society
at this time." Ex. D, p. 3 (emphasis added). A prisoner's

---

[6]The Board also noted that it was "very aware of the fact that
[petitioner] had an unstable social history to the extent that he
was previously a drug user and had prior criminal history...."
Id., p. 63: 10-13 (emphasis added). While an "[u]nstable [s]ocial
[h]istory" may be considered as a factor tending to show
unsuitability for parole (see Cal.Code Regs., tit. 15,
§ 2281(c)(3)), it is not one of the "factors indicative of
unsuitability [that] a prisoner cannot change...." See Scott II,
supra, 34 Cal.Rptr.3d at 919.

[7]The Governor did, however, make passing reference to the fact
that petitioner "may at some point be eligible to collect his
deceased wife's Social Security benefits." Ex. D, p. 2.

[8]The cited rule is duplicated at Cal.Code Regs., tit. 15,
§ 2281(a). The latter rule applies to petitioner's case. See
fn. 5, ante.

[9]In its October 12, 2005, Order denying relief below, the Superior
Court found that the Governor's reliance on "the gravity of the
commitment crime" and petitioner's "criminal history" was
supported by "some evidence." See Order (attached hereto in
response to question 13.a.(4) of Form MC-275), Section III,
pp. 3-4. But see Factual Allegations, ante, ¶15.

commitment offense and criminal history are "two factors
indicative of unsuitability [that] a prisoner cannot change...."
Scott II, supra, 34 Cal.Rptr.3d at 919. Accordingly, the
Governor's statement regarding petitioner's unsuitability "at this
time" "could be repeated annually until [petitioner] dies or is
rendered helpless by the infirmities of sickness or age." Id.,
fn. 8 at 919-20. The Court of Appeal has cast doubt on the
fairness of such continued reliance on "immutable" factors (id. at
920 (citing Smith, supra, 114 Cal.App.4th at 372)), finding that,
in such circumstances, denial of release "warrants especially
close scrutiny." Ibid. Petitioner notes that he has now been
incarcerated for nearly three decades (see Ex. C, p. 1: 8-9); that
he is of "advanced age" (id., p. 64: 5; Factual Allegations, ante,
¶9) and legally blind (id., p. 3: 4-5; Factual Allegations, ante,
¶14); that his violence potential is currently considered "low"
(id., p. 65: 9-10; Factual Allegations, ante, ¶9); that "he has
not received a 115 [rule violation report] since 1986, a very long
period of disciplinary free behavior" (id., p. 64: 20-21; Factual
Allegations, ante, ¶9); and that the most recent psychiatric
evaluation of petitioner opined that "if rehabilitation is
possible for any felon[, petitioner] qualifies as a rehabilitated
person." Id., p. 65: 13-15; Factual Allegations, ante, ¶9.[10] In
light of these facts (see also fn. 10, ante), the Governor's
continued reliance on the immutable facts of petitioner's
commitment offense and his prior criminal history "'runs contrary

---

[10]Petitioner also notes that, at the time the Board's decision
here became final, he had already been incarcerated 10½ years
longer than the total term established for him by the Board. See
Factual Allegations, ante, ¶10; see also fns. 3 and 4, ante.

15

to the rehabilitative goals espoused by the prison system....'"
Scott II, supra, 34 Cal.Rptr.3d at 920 (quoting Biggs v. Terhune,
334 F.3d 910, 917 (9th Cir. 2003)).  Indeed, because "the
predictive value" of these immutable facts is now "very
questionable" (id., citing Irons v. Warden of CSP-Solano,
358 F.Supp.2d 936, 947, fn. 2 (E.D. Cal. 2005)), at best,[11]
the Governor's decision here violates petitioner's right to due
process.

### IV.

**THE FINDING OF PAROLE UNSUITABILITY VIOLATES PETITIONER'S FEDERAL DUE PROCESS RIGHTS.**

For the reasons articulated in Sections II and III, ante
(i.e., because it is not supported by sufficient evidence with
adequate indicia of reliability, because it relies on immutable
factors, and because it is arbitrary), the Governor's reversal of
the Board's finding of parole suitability here violates
petitioner's federal due process rights.  See Greenholtz v.
Inmates of Nebraska Penal, 442 U.S. 1 (1979); Board of Pardons v.
Allen, 482 U.S. 369 (1987); McQuillion v. Duncan, 306 F.3d 895,
902 (9th Cir. 2002) ("Under the 'clearly established' framework of
Greenholtz and Allen, we hold that California's parole scheme
gives rise to a cognizable liberty interest in release on
parole."); Biggs, supra, 334 F.3d at 915 ("The liberty interest is

---

[11]See Scott II, supra, 34 Cal.Rptr.3d, fn. 9 at 920 (noting both
that predictions of future dangerousness are "exceedingly
unreliable" and that they tend to "'predict acts of violence which
will not in fact take place ("false positives"), thus branding as
"dangerous" many persons who are in reality totally harmless.'")
(quoting People v. Burnick, 14 Cal.3d 306, 327 (1975) (internal
citation omitted)).

created, not upon the grant of a parole date, but upon the
incarceration of the inmate."); <u>Jancsek v. Oregon Bd. of Parole</u>,
833 F.2d 1389 (9th Cir. 1987) (adopting the "some evidence"
standard set forth by the Supreme Court in <u>Superintendent v. Hill</u>,
472 U.S. 445, 456 (1985)); <u>id</u>. at 1390 ("Additionally, the evidence
underlying the board's decision must have some indicia of
reliability."); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974) ("The
touchstone of due process is protection of the individual against
arbitrary action of government"); <u>Biggs</u>, <u>supra</u>, 334 F.3d at 916-917
(if petitioner "continue[s] to demonstrate exemplary behavior and
evidence of rehabilitation," then "continued reliance ... on an
unchanging factor, the circumstance of the offense and conduct
prior to imprisonment, runs contrary to the rehabilitative goals
espoused by the prison system and ... result[s] in a due process
violation"); and <u>Irons</u>, <u>supra</u>, 358 F.Supp.2d at 941-949 (relying on
<u>Biggs</u> to find that Board's finding of unsuitability was not
supported by sufficient evidence).

CONCLUSION

Petitioner's continued incarceration, more than a decade past
the term set by the Board for his offense, infringes upon
petitioner's "right to have his term fixed at a number of years
that is proportionate to his offense." <u>Rodriguez</u>, <u>supra</u>, 14
Cal.3d at 652.

Moreover, because the Governor relied on impermissible factors,
unreliable evidence and incorrect information, his decision to
reverse the Board's finding of parole suitability here must be
overturned as violative of state and federal due process guarantees.

17

Finally, because the Governor failed to consider two factors that he is "required to address" (Scott II, supra, 34 Cal.Rptr.3d at 921), and because the only "evidence" of petitioner's unsuitability is derived from the "immutable" facts of his offense and prior criminal history (see id. at 920-21), the Governor's decision here reversing the Board's finding of parole suitability violates petitioner's state and federal due process rights.

WHEREFORE, good cause appearing, petitioner prays this Court will grant the petition for writ of habeas corpus or, in the alternative, issue an order to show cause, appoint counsel, permit discovery and order any other relief (including an evidentiary hearing) it may deem necessary and appropriate in the interests of justice.

Dated: 2-21-06

Respectfully submitted,

*Charles W. Lewis*

Charles W. Lewis
Petitioner, pro se

18