Charles W. Lewis
B-83314
California Medical Facility
P. O. Box 2500, MD-113-L
Vacaville, CA 95696-2500

Petitioner, pro se



FILED

AUG 23 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES W. LEWIS,                )   Case No. C 07-2466 CW (PR)
                                 )
         Petitioner,             )   TRAVERSE TO ANSWER TO PETITION
                                 )   FOR WRIT OF HABEAS CORPUS;
    v.                           )   MEMORANDUM OF POINTS AND
                                 )   AUTHORITIES IN SUPPORT THEREOF
ARNOLD SCHWARZENEGGER, et al.,   )
                                 )
         Respondents.            )
_____)

### TRAVERSE

Petitioner respectfully submits this Traverse to
Respondents' Answer to the Petition for Writ of Habeas Corpus.
He hereby admits, denies, and alleges as follows:

1. Petitioner admits the allegations of ¶ 1 of the Answer,
except that he denies that his continued detention is lawful.  He
also clarifies that the "indeterminate life-term" to which he was
sentenced (Answer, p. 2: 12) rendered him eligible for parole
after seven calendar years.  Cal. Pen. Code, § 3046 (Deering's,
1976).

2. Petitioner does not dispute the allegations of ¶ 2 of the
Answer.

3. Petitioner does not dispute the allegations of ¶ 3 of the
Answer.

4. Petitioner avers that on September 25, 1976, Colbert and
Hasznos met petitioner, without prior notice, at his cousins'

1

house.   Consistently with what he has told the parole board, he
avers that Hasznos had brought some drugs for petitioner and that
petitioner remained downstairs while Hasznos and Colbert went
upstairs and began fighting.   He avers that he went upstairs to
break up the fighting, but that instead he joined in, kicking and
beating Hasznos.   He admits the allegation that "[h]earing them
argue, Petitioner's cousins demanded that Hasznos leave their
home."   Answer, p. 2: 23-24.   He further admits the allegation,
see id., p. 2: 24-25, that "Petitioner and Colbert left the home
with Hasznos between them."   He avers that he returned inside his
cousins' home and that when he did so, Hasznos was still outside,
alive, standing and conscious.   He avers that it was only later,
when he again went outside, that he found Hasznos apparently
dead.   He avers that he had no part in, or prior knowledge of,
Hasznos' actual killing.   As the Governor acknowledges,
petitioner does admit to "assisting in disposing of Mr. Hasznos'
body by helping to find a rug and wrapping him in it but denie[s]
transporting and dumping the corpse."   Id., Ex. E, p. 2.

    5.  Petitioner admits the allegations of ¶ 5 of the Answer.

    6.  Petitioner denies the affirmative suggestion in ¶ 6 of
the Answer that he personally "murder[ed]" Hasznos.   See
Petition, pp. 5-6 (Factual Allegations, ¶ 16).   He further denies
the assertion in ¶ 6 of the Answer that he was ever "convicted"
of kidnapping.   Id., p. 5 (Factual Allegations, ¶ 13).   To the
extent that respondents include substantial periods of time
during which petitioner was a law-abiding citizen, petitioner
denies the allegation that his criminal history "spans" 17 years,

see Answer, p. 3: 10-11; rather, he reasserts as a fact that
prior to his present incarceration, he had spent less than eight
years of his life in custody.   Petition, p. 5 (Factual
Allegations, ¶ 14).

    7. Petitioner admits that, on September 15, 2004, the Board
of Parole Hearings ("Board") found him suitable for parole, as
acknowledged in ¶ 7 of the Answer.

    8. Petitioner admits that Governor Schwarzenegger reversed
the Board's decision finding Petitioner suitable for parole, as
acknowledged in ¶ 8 of the Answer.

    9. Petitioner admits that, in reversing the Board's finding
that petitioner was suitable for release on parole, the Governor
considered the factors identified in ¶ 9 of the Answer.

    10. Petitioner admits the allegations in ¶ 10 of the Answer.

    11. Petitioner denies the allegation in ¶ 11 of the Answer
that the San Francisco County Superior Court "noted that
Petitioner's ... admission [was] corroborated by Colbert's
testimony...."  Answer, p. 4: 19-20.   Rather, the Superior Court
noted "Petitioner's ... admission that in conjunction with an
accomplice [Colbert], he kicked and beat Mr. Hasznos to
death...."  Answer, Ex. F, Order (Oct. 12, 2005), p. 4 (emphasis
added).   Petitioner denies the suggestion that he made any such
"admission."  See Petition, pp. 5-6 (Factual Allegations, ¶ 16).
He also denies the suggestion that the Superior Court described
the victim's nude body as "brutalized."  Answer, p. 4: 20.

    12. Petitioner admits the allegations of ¶ 12 of the Answer.

    13. Petitioner admits the allegations of ¶ 13 of the Answer.

3

14. Petitioner admits the allegations of ¶ 14 of the Answer.

15. Petitioner denies the allegations of ¶ 15 of the Answer. Specifically, petitioner has not failed to make a case for relief under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").

16. Petitioner denies the allegations of ¶ 16 of the Answer. Specifically, there *is* a basis for federal jurisdiction as petitioner *does* have a federally protected liberty interest in parole.  See Sass v. Calif. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006) (noting that In re Dannenberg, 34 Cal.4th 1061 (2005) "does not explicitly or implicitly hold that there is no constitutionally protected liberty interest in parole").

17. Petitioner admits that he had an opportunity to present his case to the Board and that the Governor presented him with reasons for reversing the Board's finding of parole suitability. He otherwise denies the allegations of ¶ 17 of the Answer.

18. Petitioner denies the allegations of ¶ 18 of the Answer, and specifically that "the some-evidence standard of review does not apply" here.  *Compare* Answer, p. 6: 20-21, *with* Irons v. Carey, 479 F.3d 658, 662 (9th Cir. 2007) ("The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' ... or is 'otherwise arbitrary.'") (quoting Superintendent v. Hill, 472 U.S. 445, 457 (1985)).

19. Petitioner denies the allegations of ¶ 19 of the Answer.

20. Petitioner denies the allegations of ¶ 20 of the Answer.

21. Petitioner denies the allegations of ¶ 21 of the Answer. See Irons, 479 F.3d at 664 (noting that Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003) "represents the law of this circuit").

22. Petitioner denies the allegation in ¶ 22 of the Answer.

23. Petitioner denies the allegation in ¶ 23 of the Answer.

24. Petitioner denies the allegation in ¶ 24 of the Answer that, if the petition is granted, his remedy is "limited to a new parole consideration hearing before the Board that comports with due process." Compare Answer, p. 7: 25-26, with Martin v. Marshall, 448 F.Supp.2d 1145 (N.D.Cal. 2006) (granting petition for writ of habeas corpus and ordering petitioner's release on parole forthwith) and In re Lee, 49 Cal.Rptr.3d 931, 941 (2006) ("it serves no purpose to remand this matter to the Governor to permit him to reconsider his decision").

25. Petitioner admits the allegations in ¶ 25 of the Answer.

26. Petitioner denies the allegation in ¶ 26 of the Answer that an evidentiary hearing is not necessary in this matter. Petitioner notes that he requested an evidentiary hearing in each state court to which he presented his petition for writ of habeas corpus. See Petition, ¶ 19; Answer, Ex. F, Superior Court Petition, p. 4, ¶ 4; id., Ex. G, Court of Appeal Petition, p. 5, ¶ 4; id., Ex. H, Supreme Court Petition, p. 6, ¶ 4. Because "he has not shown 'a lack of diligence at the relevant stages of the state court proceedings'" (Horton v. Mayle, 408 F.3d 570, 582 n. 6 (9th Cir. 2004)), he "is not subject to AEDPA's restrictions on evidentiary hearings." Id. To the extent there remain

disputed issues of fact, petitioner renews his request for an evidentiary hearing. Petition, p. 7 (Sec. V, ¶ 3).

27. Petitioner denies the allegation in ¶ 27 of the Answer.

28. Except as expressly admitted above, Petitioner denies, generally and specifically, each and every allegation of the Answer.

29. Petitioner reasserts the factual allegations of his petition, which he incorporates as though fully set forth herein.

30. Petitioner specifically alleges that his constitutional rights *have* been violated.

Accordingly, for the reasons set forth in the Petition and herein, petitioner respectfully requests that the petition for writ of habeas corpus be granted.

Dated: *8/14/07*

Respectfully submitted,

*Charles H. Lewis*
Charles W. Lewis
Petitioner, pro se

MEMORANDUM OF POINTS AND AUTHORITIES

THE STATE COURT'S DENIAL OF PETITIONER'S HABEAS CORPUS
PETITION CONSTITUTED AN UNREASONABLE APPLICATION OF THE
CLEARLY ESTABLISHED UNITED STATES SUPREME COURT DECISION IN
SUPERINTENDENT V. HILL, 472 U.S. 445 (1985), AND WAS BASED ON
AN UNREASONABLE DETERMINATION OF THE FACTS.

I

STANDARD OF REVIEW

This case is governed by the provisions of the AEDPA.  The
standard of review in such cases is set forth in the Petition at
pages 9-11.  Petitioner will show below that the state court's
denial of his petition for writ of habeas corpus was both an
unreasonable application of Hill, supra, 472 U.S. 445, and based
on an unreasonable determination of the facts, and therefore that
he is entitled to relief under 28 U.S.C. § 2254(d).

II

DUE PROCESS

A. Petitioner has a cognizable liberty interest in parole.

Notwithstanding respondents' assertion to the contrary, see
Answer, p. 5: 19, "California's parole scheme gives rise to a
cognizable liberty interest in release on parole."  McQuillion v.
Duncan, 306 F.3d 895, 902 (9th Cir. 2002).  "The liberty interest
is created, not upon the grant of a parole date, but upon the
incarceration of the inmate."  Biggs, supra, 334 F.3d at 915.
See also Sass, supra, 461 F.3d at 1127-28 (rejecting state's
argument that McQuillion and Biggs were superseded by Dannenberg,
supra, 34 Cal.4th 1061, holding that "Dannenberg does not
explicitly or implicitly hold that there is no constitutionally
protected liberty interest in parole").

7

B. Due Process Requires Both That Some Evidence Support A
   Parole Denial and That Any Such Decision Not Be Arbitrary.

Petitioner's liberty interest in parole "is protected by the

procedural safeguards of the Due Process Clause." Irons, supra,

479 F.3d at 662 (citations omitted).   Notwithstanding

respondents' assertion to the contrary, see Answer, p. 6: 20-25,

"[t]he Supreme Court has clearly established that a parole

[authority's] decision deprives a prisoner of due process with

respect to this interest if the [authority's] decision is not

supported by 'some evidence in the record,' ... or is 'otherwise

arbitrary.'"[1]   Irons, 479 F.3d at 662 (quoting Hill, supra,

472 U.S. at 457).   Accord Willis v. Kane, __ F.Supp.2d __, __,

2007 WL 1232060 (N.D.Cal.) at *3 ("The some evidence standard of

Superintendent v. Hill is clearly established in the parole

context for purposes of [28 U.S.C.] § 2254(d).").

"A critical issue in parole denial cases concerns the [parole

authority's] use of evidence about the murder that led to the

conviction.   Three Ninth Circuit cases provide the guideposts for

applying the Superintendent v. Hill some evidence standard on

this point...." Willis, supra, __ F.Supp.2d at __, 2007

WL 1232060 at *3 (listing Biggs, supra, 334 F.3d 910, Sass,

supra, 461 F.3d 1123, and Irons, supra, 479 F.3d 658).

---

[1] With respect to prisoners convicted of murder, the "final parole
decisionmaking authority" lies exclusively with the Governor, not
the Board.  Johnson v. Gomez, 92 F.3d 964, 967 (9th Cir. 1996).
"Moreover, the [G]overnor must use the same criteria as the
[Board]."  Id.  As with the Board, due process requires that the
Governor's decision be supported by some evidence in the record
and that it not be arbitrary.  In re Rosenkrantz, 29 Cal.4th 616,
676-77 (2002).

The message of these three cases is that the [parole
authority] can look at immutable events, such as the nature
of the conviction offense and pre-conviction criminality, to
predict that the prisoner is not currently suitable for
parole even after the initial denial (Sass), but the weight
to be attributed to those immutable events should decrease
over time as a predictor of future dangerousness as the years
pass and the prisoner demonstrates favorable behavior (Biggs
and Irons). Sass did not dispute the principle that, other
things being equal, a murder committed 50 years ago is less
probative of a prisoner's current dangerousness than one
committed 10 years ago. Not only does the passage of time in
prison count for something, exemplary behavior and
rehabilitation in prison count for something according to
Biggs and Irons. Superintendent v. Hill's [some evidence]
standard might be quite low, but it does require that the
decision *not* be arbitrary, and reliance on only the facts of
the crime might eventually make for an arbitrary decision.

Willis, supra, 2007 WL 1232060 at *4 (emphasis in original).

"One must look to state law to answer the question, '"some

evidence" of what?'" Id. As the California Court of Appeal

recently put it, "the test is not whether some evidence supports

the *reasons* the Governor cites for denying parole, but whether some

evidence indicates a [prospective] parolee's release *unreasonably*

*endangers public safety.*" Lee, supra, 49 Cal.Rptr.3d at 936

(emphasis in original). "Some evidence of the existence of a

particular factor does not necessarily equate to some evidence the

parolee's release unreasonably endangers public safety." Id. at

936-37 (footnote omitted). In In re Lawrence, 2007 DJDAR 7363

(May 22, 2007), the Court of Appeal applied this principle in the

case of a prisoner who, like petitioner, received "a sentence of

seven years to life -- the standard statutory penalty for murders

committed before 1978" (id. at 7364),[2] holding:

---

[2] Lawrence turned herself in to authorities in 1982, after being a
fugitive for some 11 years. Id. By contrast, petitioner here has
been in custody at least since 1977 (Answer, Ex. F, p. 1), *five
years before Lawrence turned herself in.*

9

[T]he commitment crime can lack the power to supply "some
evidence" supporting a denial of parole because of the
interplay between two factors -- the nature of that crime and
the passage of time since its commission.  That is, the fact
there is "some evidence" the crime was committed and committed
a certain way at a certain time does not mean that crime
necessarily represents "some evidence" the prisoner's release
on parole will pose an unreasonable risk of danger to the
public safety at the present time.  Whether it possesses the
necessary predictive value depends both on the nature of the
crime and how long ago it happened.

Lawrence, 2007 DJDAR at 7334.  Thus,

[A] finding [that] a given murder was committed in an
"atrocious" manner, for example, only supports a denial of
parole to an otherwise suitable inmate when the atrociousness
of the murder was of such a nature it logically leads to the
conclusion release of the inmate *at the present time* would
create an "unreasonable risk" of danger to public safety.  "The
commitment offense can negate suitability only if circumstances
of the crime ... *rationally indicate* that the offender will
present an unreasonable public safety risk if released from
prison."

Id. at 7376 (quoting In re Scott, 133 Cal.App.4th 573, 595 (2005))

(emphasis in Lawrence).  See also id. at 7384 (noting that

predictive value of commitment offense "dissipates" with time).

*Accord* Willis, ___ F.Supp.2d at ___:

The facts of th[e] crime will be just as terrible 20 years from
today as they are today and as they were 20 years ago.
Notwithstanding the terrible nature of the crime, the critical
question the [parole authority] [i]s supposed to decide ...
[i]s whether "consideration of the public safety requires a
more lengthy period of incarceration for this individual."

2007 WL 1232060, *9 (quoting Cal. Pen. Code, § 3041(b)).  Cf. In re

Barker, 2007 DJDAR 7548, 7557-60 (May 24, 2007) (holding, in case of

prisoner convicted of a *1977 triple murder*, that continued reliance

on the circumstances of the commitment offenses violated

petitioner's due process rights because, "[i]n sum and in short, the

record ... contains no evidence Barker poses an unreasonable risk to

public safety even under the deferential 'some evidence' standard").

C. Whatever Predictive Value Petitioner's Commitment Offense
and Prior Criminal History May Have Had Some 30 Years Ago
Has Dissipated Given Petitioner's Exemplary Prison Record
and Rehabilitation Over the Ensuing Years.

The Governor's decision to reverse the Board's grant of parole

to petitioner here, no less than the Superior Court's decision

upholding that reversal, was based exclusively on the immutable

circumstances surrounding petitioner's now-31-year-old offense and

(even older) prior criminal history. See Answer, p. 3: 22 - p. 4:

2 and id., p. 4: 14 - p. 5: 3.  Here, as in Lawrence, whatever

predictive value petitioner's commitment offense may once have had,

that predictive value has now "dissipate[d] to the point [that] it

cannot satisfy the 'some evidence' standard [31] years after its

commission" and after three decades of incarceration.  Lawrence,

2007 DJDAR at 7384.  It is uncontroverted that petitioner "has

served far beyond the 'minimum number of years required by [his]

sentence.'"  Id. (emphasis added) (quoting from a passage in Irons,

479 F.3d at 665, which concluded that, "given the particular

circumstances of the offenses in [Biggs, Sass, and Irons], due

process was not violated when th[o]se prisoners were deemed

unsuitable for parole prior to the expiration of their minimum

terms") (emphasis added).  See Petition, p. 2 (Factual Allegations,

¶ 6) (noting that petitioner has been eligible for parole since

July 12, 1984); Answer, Ex. I, Proceedings at 1: 13-14 (same; also

noting petitioner's sentence of "seven years to life").  "At the

time the Governor reversed the Board's parole recommendation," the

second such recommendation in three years,[3] "[petitioner] had been

---

[3]See Petition, pp. 2-3 (Factual Allegations, ¶¶ 7-9); id., Ex's. A
and C.

11

imprisoned for [20+] years longer (now ... [23] years longer) than [his] minimum seven years to life sentence." Lawrence, 2007 DJDAR at 7384. It is undisputed, moreover, that, at that point, petitioner had already been incarcerated more than a decade longer than the total term of 198 months -- not taking into account the award of post-conviction credit -- that the Board established for *both* his offense and prior criminal record. See Petition, p. 4 (Factual Allegations, ¶ 10); id., Ex. C, p. 67.

In light of the uncontroverted evidence of petitioner's rehabilitation, advanced age, and developing disability, the foregoing comments are no less applicable to the immutable circumstances surrounding petitioner's prior criminal history,[4] now more than three decades old, as they are to petitioner's offense. In particular, neither the state courts nor respondents have ever disputed that:

> [P]etitioner has now been incarcerated for three decades; that he is of "advanced age" and legally blind; that his violence potential is currently considered "low"; that "he has not received a 115 [rule violation report] since 1986, a very long period of disciplinary free behavior"; that he "has enhanced his ability to function within the law upon release"; that he has both "marketable skills" and "realistic plans for parole that include living with a friend or at a transitional-living center, and maybe even finishing college"; that "he has participated in an array of self-help and therapy"; that he has "volunteered to help terminally-ill inmates"; and has "received favorable reports from institutional staff and mental-health evaluators."

Petition, p. 22 (references to the record of both the 2004 Board hearing transcript and the 2005 gubernatorial reversal of the Board's grant of parole to petitioner omitted here).

---

[4]Which does *not* include a "conviction" for kidnapping. See Traverse, ante, ¶ 6; Petition, p. 5 (Factual Allegations, ¶ 13), and id., Ex. F (Declaration of Charles W. Lewis), ¶ 5.

Nor does anyone dispute petitioner's "stable social history
as exhibited by his [marriage] of 38 years" (Petition, Ex. C,
p. 63: 8-10) or that his "advanced age ... reduce[s] the
probability of recidivism." Id., Ex. C, p. 64: 6-8; cf. Answer,
Ex. E, p. 3 (noting that the "likelihood of recidivism is probably
reduced"). See Petition, p. 3 (Factual Allegations, ¶ 9).
Considering the totality of circumstances here, and in light of
the contemporaneous psychiatric evaluation of respondents' own
doctor (Gary Collins), who concluded that "if rehabilitation is
possible for any felon [petitioner] qualifies as a rehabilitated
person" (id., p. 3, and id., Ex. C, p. 65: 13-15), there is now
"no evidence that [petitioner] is likely to commit another crime
or that his release would unreasonably endanger the public." Lee,
supra, 49 Cal.Rptr.3d at 937.  The Governor's conclusion to the
contrary violated due process and the state court decision
upholding that conclusion constituted an unreasonable application
of clearly established federal law within the meaning of 28 U.S.C.
§ 2254(d)(1). Cf. Willis, supra, 2007 WL 1232060 at *10.

    D. Because of the Nature and Age of Petitioner's Commitment
       Offense, It Does Not Supply "Some Evidence" Rationally
       Demonstrating He is a Present Threat to Public Safety.

With commendable candor, the Governor concedes that he "will
never know with 100% certainty what exactly happened the night
Mr. Hasznos was murdered." Answer, Ex. E, p. 2.  He concludes
nonetheless that "even if Mr. Lewis's version of *limited
involvement* is believed, he *participated in* a particularly cruel
and senseless attack...." Id. (emphasis added).  What the Governor
(and the state courts which upheld the Governor's decision) failed

13

to indicate, however, is how or why the "'circumstances of the crime reliably established by evidence in the record *rationally indicate* that the offender will present an unreasonable public safety risk if released from prison.'"  *Lawrence*, 2007 DJDAR at 7376 (italics in *Lawrence*) (underlined emphasis added here) (quoting *Scott*, *supra*, 133 Cal.App.4th at 595).  *Significantly, respondents make no attempt to do so here.*  And the reason is clear: the circumstances of petitioner's "limited involvement" and "participation" in the offense of which he was convicted, as "reliably established" by evidence in the record, do *not* in fact "rationally indicate" that he *presently* poses an unreasonable public safety risk if released from prison.

Preliminarily, petitioner notes that "[a]t the option of the observer, most [first degree murders] could be said to be 'atrocious, heinous, or callous' -- or pick your pejorative."  *Id.* at 7382; *compare* Maynard v. Cartwright, 486 U.S. 356, 364 (1988) (noting that "an ordinary person could honestly believe that *every* unjustified intentional taking of human life is 'especially heinous'") (emphasis added).  And, as the Court of Appeal recently observed, "it is seldom either a board or a governor classifies a murder, first or second degree, as less than 'atrocious, heinous, or callous' or the equivalent.  Indeed they usually add a qualifier such as 'extremely' or 'vicious' to the description."[5]  *Id.*  The Court hastened to add, however, that "[n]ot every first degree

---

[5] *See also* Scott, 133 Cal.App.4th, fn. 7 at 919 (noting that "gubernatorial reversals of Board decisions are most often based solely or primarily on the gravity of the inmate's offense").

14

murder can be found to be 'atrocious, heinous, or callous' or the equivalent without doing violence to the Supreme Court's articulation of the 'some evidence' test." Id. And that is because, under state law,[6] "'release on parole is the rule, rather than the exception.'" Barker, supra, 2007 DJDAR at 7554 (quoting In re Smith, 114 Cal.App.4th 343, 351 (2003) (in turn citing Cal. Pen. Code, § 3041, subd. (a))).

"The Governor may deny parole if a defendant committed his crimes 'in an *especially* heinous, atrocious or cruel manner.'" Lee, 49 Cal.Rptr.3d at 937 (emphasis added in Lee to Cal. Code Regs., tit. 15, § 2402, subd. (c)(1), a regulation[7] which is identical to § 2281, subd. (c)(1); whereas the former, pursuant to § 2400, is applicable to offenses committed on or after November 8, 1978, the latter is applicable to offenses, such as petitioner's, committed *prior* to that date). Significantly, "[t]he measure of atrociousness is not general notions of common decency or social norms, for by that yardstick *all* murders are atrocious." Id. (emphasis added). "Rather, the inquiry is whether among [first degree] murders the one committed by [petitioner] is particularly heinous, atrocious or cruel." Id. (citations omitted). "By that measure," petitioner submits, "[his] crimes were more commonplace than egregious." Id.

---

[6] "When we assess whether a state parole board's suitability determination is supported by 'some evidence' in a habeas case, *our analysis is framed by state law.*" Sass, 461 F.3d at 1135 (Reinhardt, J., dissenting) (emphasis added); *accord* Willis, 2007 WL 1232060, *4 ("One must look to state law to answer the question, '"some evidence" of what?'").

[7] Subsequent undesignated references are to Title 15 of the California Code of Regulations.

Turning to the record then, one finds that, *according to Respondent Governor Schwarzenegger,*

> On September 23, 1976, Charles Lewis [petitioner here] and two crime partners, Jeffrey Colbert and Gary Hasznos, robbed a store in Hayward. As his partners waited outside, Mr. Lewis entered the rear of the store and confronted the store owner. He struck the store owner with the gun he was carrying, demanded money from him, and shot him in the shoulder. Before taking $1,000 dollars [sic] from the store-owner's wallet, Mr. Lewis tied him up and covered him with a blanket.

> Later, while at the home of Mr. Lewis's cousin, a fight broke out among the three partners because Mr. Hasznos, who was given the $1,000 to hold onto after the robbery, told Mr. Lewis and Mr. Colbert that he no longer had the money. *Mr. Lewis and Mr. Colbert kicked and beat Mr. Hasznos, and at some point he also was stabbed.* Mr. Hasznos ultimately was rolled into a rug and dumped in the parking lot of a baseball stadium. His dead, nude body was discovered the next day.

> Following his arrest, a jury found Mr. Lewis guilty of first-degree murder and he was sentenced to serve an indeterminate life term in prison. In a separate proceeding, Mr. Lewis pled no contest to first-degree robbery with a firearm for the crime he perpetrated against the store owner. For this offense he received a concurrent sentence of five years to life.

Answer, Ex. E (Governor's reversal), p. 1 (emphasis added). The Governor went on to note:

> Mr. Lewis admitted at his 2001 parole hearing to kicking and beating Mr. Hasznos. His claim over the years has been that the fight ultimately moved from indoors to outdoors, and once outdoors, Mr. Colbert alone beat and at some point stabbed Mr. Hasznos. He told the 2001 Board that he was inside during this time and by the time he went outside, Mr. Hasznos appeared dead. He admitted to assisting in disposing of Mr. Hasznos's body by helping to find a rug and wrapping him in it but denied transporting and dumping the corpse.

Id., Ex. E, p. 2. The Governor added:

> And *there is some evidence in the record before me* that Mr. Lewis was a major participant in the killing. *According to the sworn "Complaint" (affidavit) filed by the investigating inspector of the San Francisco Police Department, Mr. Colbert claimed* to have watched Mr. Lewis beat, kick, and stab the victim. *In the same document, Mr. Colbert said* that Mr. Lewis later described "finishing off" Mr. Hasznos by hitting him in the head with a rock. A jury found Mr. Lewis guilty of first-degree murder -- a crime requiring a willful, deliberate, and premeditated killing.

Id., Ex. E, p. 2 (emphasis added).

"In exercising his authority over paroles, the Governor can apply *a preponderance of the evidence* standard." In re Morrall, 102 Cal.App.4th 280, 302 (2002) (citing Cal. Evid. Code, § 115) (emphasis added); *accord* In re Tripp, 2007 DJDAR 5877, 5878 (April 26, 2007) (noting that parole unsuitability factors must be found by a preponderance of the evidence). See also Hamdi v. Rumsfeld, 124 S.Ct. 2633, 2651 (2004) (noting use of "some evidence" standard in the past "as a standard of review, *not* as a standard of proof") (emphasis added); United States v. Restrepo, 946 F.2d 654, 659 (9th Cir. 1991) (en banc) (noting that, as a general matter, due process is satisfied by a preponderance of the evidence for factfinding at sentencing, but recognizing exception "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction").[8]  The Governor's admission that there is only "some evidence" in the record that petitioner was a "major participant" in the killing at issue here (Answer, Ex. E, p. 2) belies any claim now that the Governor made his decision to the requisite "preponderance of the evidence" standard.  Moreover, that "some evidence" was derived from an "affidavit" that (1) was outside the record available to the Board (see Petition, p. 15; id., Ex. F, ¶ 6) and therefore was not properly subject to review by the Governor (In re Cooper, 2007 DJDAR 11517, 11525 (July 27, 2007) ("The Governor's review must be

---

[8] "The Board, in setting the release date for an indeterminate sentence, performs the same function as does the trial court in ordering a determinate sentence -- it fixes a term of definite duration."  In re Hogan, 187 Cal.App.3d 819, 824 (1986).

of *the same record that was before the Board.*") (emphasis added))
and (2) consisted of inherently unreliable hearsay from one of
petitioner's crime partners (Petition, pp. 14-15; People v. Tobias,
25 Cal.4th 327, 331 (2001); see fn. 9, infra), a co-defendant in
this case who took a deal for a reduced sentence (id., p. 2,
Factual Allegations, ¶ 5; Answer, Ex. B, p. 4, noting that Colbert
and petitioner were *both* charged with the murder of Gary Hasznos).[9]

More importantly, the Governor *concedes* both that he does not
know "what exactly happened" and that petitioner may have had only
"limited involvement" in the killing of Mr. Hasznos.  Answer,
Ex. E, p. 2.  Petitioner's "limited involvement" in the killing of
Mr. Hasznos does not "logically lead[] to the conclusion [that]
release of the inmate *at the present time* would create an
'unreasonable risk' of danger to public safety." Lawrence, 2007
DJDAR at 7376.  *Compare* Barker, 2007 DJDAR at 7548 ("Braeseke shot
his parents and *Barker shot the grandfather, after first hitting
him several times on the head with a chisel....*  Barker was
convicted of two counts of second degree murder and one count of
first degree murder." (emphasis added)), id. at 7560 (concluding
"the record ... contains no evidence Barker poses an unreasonable
risk to public safety even under the deferential 'some evidence'
standard") and In re Elkins, 50 Cal.Rptr.3d 503, 505-06 (2006) ("in
order to rob a sleeping friend he owed money for drugs, a 19-year-

---

[9]The Governor noted that "Mr. Colbert kicked and beat Mr. Hasznos"
(Answer, Ex. E, p. 1) and that "Mr. Colbert claimed to have watched
Mr. Lewis [petitioner here] beat, kick, and stab the victim."  Id.,
Ex. E, p. 2.  It is clear that, *but for the deal he took naming him
as an accessory, Mr. Colbert was an accomplice to the killing of
Mr. Hasznos.*  See Cal. Pen. Code, § 32 (defining accessory as one
who acts only "after" a felony has been committed).

old addict who was on probation for another offense struck the victim with a baseball bat then pummeled him to death with that bat, drove the body into the wilderness and dumped it down a remote embankment, stole more of the victim's belongings from a storage locker, and fled the state"),[10] id. at 523 (concluding that "Governor's decision reversing the Board's grant of parole on the basis of the facts of the offense lacks 'some evidence' that granting parole posed 'an unreasonable risk of danger to society'").

The foregoing conclusion is unaltered by the Governor's observation that a jury, some 30 years ago, "found Mr. Lewis guilty of first-degree murder -- a crime requiring a willful, deliberate, and premeditated killing." Answer, Ex. E,  p. 2. For, except for felony murders, "first degree murders *by definition* involve premeditation and deliberation." Barker, 2007 DJDAR at 7558 (emphasis added). Similarly, the foregoing conclusion is unaltered by any "aggravating facts" the Governor may have attributed to petitioner. *Compare* id. (agreeing with concession that "Braeseke's grandfather did suffer until he was shot," but concluding, "without minimizing the severity of Barker's crimes," that "the murder was no more callous, dispassionate, calculated, cruel or committed with more disregard for suffering than most such offenses" (internal quotation marks omitted); characterizing circumstance that multiple victims were killed as "among the 'immutable' facts of the crime" yet

_____

[10]This description of the Elkins offense is taken from Lawrence, supra, 2007 DJDAR at 7383.

concluding that "'Given the lapse of 2[9] years and the exemplary rehabilitative gains made by [Barker] over that time, continued reliance on the aggravating facts of the crime no longer amount[s] to 'some evidence' supporting denial of parole.'" (quoting Elkins, supra, 50 Cal.Rptr.3d at 520) (alterations in Barker)). Cf. Elkins, 50 Cal.Rptr.3d at 519 ("the Governor could not rely on the fact [petitioner] might have avoided killing to show his killing to be especially brutal").

Additionally, the Board, when it sets a release date, "take[s] into account ... whatever facts make a given offense aggravated or mitigated, compared to the hypothetical average." Elkins, 50 Cal.Rptr.3d at 520. "Thus, a governor, in reviewing a suitability determination, must remain focused not on circumstances that may be aggravating in the abstract but, rather, on facts indicating that release currently poses 'an unreasonable risk of danger to society.'" Id. at 521 (citations omitted).

"By the time of the Governor's 2005 reversal, [petitioner] had served [28+] years, [2]1 years beyond his minimum eligibility date." Id. (alterations here). He had been considered for parole at least 15 times before. Petition, p. 2 (Factual Allegations, ¶ 7); id., Ex. C, p. 63: 26 - p. 64: 1 ("There are some 15 transcripts that we reviewed"). The Board found that "Category One C" was "appropriate" (Petition, Ex. C, p. 66: 10-11), but then did not impose the aggravated term. Id., Ex. C, p. 66: 16-18 ("The panel assesses 156 months for the base offense, notes that this is the middle term."). This was the

*second* time that the Board found petitioner suitable for release on parole. Id., p. 2 (Factual Allegations, ¶ 7); see id., Ex's. A and B. "[T]he Governor has now reversed that decision [again], once more relying on the gravity of the offense, *something that no amount of rehabilitative progress can ever change.*" Elkins, 50 Cal.Rptr.3d at 521 (emphasis added). Here, as in Lawrence, Barker, and Elkins, because of the nature and age of petitioner's offense, it no longer supplies "some evidence" rationally indicating that his release would now pose an unreasonable risk to public safety. Lawrence, 2007 DJDAR at 7380; Barker, 2007 DJDAR at 7558; Elkins, 50 Cal.Rptr.3d at 520 ("Given the lapse of [30+] years and the exemplary rehabilitative gains made by [petitioner here] over that time, continued reliance on the[] ... facts of the crime no longer amount[s] to 'some evidence' supporting denial of parole.").[11]

"[T]he some evidence standard ... protects against arbitrary decisions." Willis, 2007 WL 1232060, *10 (citing Hill, supra, 472 U.S. at 454-55, 457). Here, as in Willis -- *only after a dozen more years* -- the commitment offense "repeatedly has been relied on to deny parole notwithstanding the extensive evidence on the other side of the scale." Id. Under the circumstances,

---

[11] "The commitment offense ... is an unsuitability factor that is immutable and whose predictive value may be very questionable after a long period of time. [There is] strong legal and scientific support that *predictions of future dangerousness are exceedingly unreliable*, even where the passage of time is not a factor and the assessment is made by an expert. Reliance on an immutable factor, without regard to or consideration of subsequent circumstances, may be unfair, run contrary to the rehabilitative goals espoused by the prison system, and result in a due process violation." Elkins, 50 Cal.Rptr.3d at 520 (citations and internal quotation marks omitted) (emphasis added).

the [Governor's] reliance on the circumstances of the murder
to find [petitioner] unsuitable for parole for the
seven[*teen*]th time and at least [2]8 years into his [7]-to-
life sentence was arbitrary and therefore did not comport
with the some evidence standard.    It violated due process.
The state court's ... decision to the contrary was an
unreasonable application of <u>Superintendent v. Hill</u>.
[Petitioner] is entitled to relief under the standard of
28 U.S.C. § 2254(d).

<u>Willis</u>, 2007 WL 1232060, *10 (alterations and emphasis here).

    E. The Facts Concerning Petitioner's Prior Offenses, Now More
       Than Three Decades Old, Are Not Reliably Documented
       Sufficiently to Satisfy Due Process.

    Petitioner's criminal history may be, as respondents assert,

"extensive and significant" (<u>see</u> Answer, p. 4: 1-2; <u>id</u>., Ex. E),

but "there is *nothing* in the record about the *circumstances* of

th[e] [prior] offense[s]" (<u>In re Smith</u>, 109 Cal.App.4th 489, 505

fn. 8 (2003) (first emphasis in original)) -- and certainly

no evidence with sufficient "'indicia of reliability'" (<u>Biggs</u>,

334 F.3d at 915) -- to establish that those circumstances were of

such a nature as to warrant a finding of unsuitability here.   <u>Cf</u>.

<u>Smith</u>, 109 Cal.App.4th at 505 (noting that "a 'previous record of

violence'" may qualify as "a circumstance tending to establish

unsuitability for parole" if there was "an attempt to inflict

serious injury or other 'assaultive behavior'"); § 2281(c)(2)

(same).   In <u>Smith</u>, 109 Cal.App.4th 489, the court dismissed the

Governor's reliance on "20- to 30-year-old theft-related"

charges, as well as a charge of assault which was dismissed in a

plea bargain that resulted in conviction (as here) of disturbing

the peace.   <u>Id</u>. at 504-05 and fn. 8.   *All* of petitioner's prior

offenses (Answer, p. 3: 6-8) are now *more than 30 years old*.   <u>See</u>

<u>id</u>., Ex. B.   Petitioner acknowledges that as a juvenile in 1960,

22

*nearly half a century ago,* he was charged with kidnapping and statury rape of a teenaged girl. Petition, Ex. F (Declaration, ¶ 5); Answer, p. 3: 7; id., Ex. B. Neither the record nor respondents, however, dispute petitioner's contention (see id.) that the kidnapping charge was dropped and that he ended up serving six months in county jail on the charge of statutory rape. *Compare* Answer, Ex. B. And in any event,[12] as respondents' own psychiatrist, Dr. Gary Collins, has opined (Petition, p. 3, ¶ 9), petitioner's violence potential is *now* "low" (id., Ex. C, p. 65: 8-10) and "if rehabilitation is possible for any felon [petitioner] qualifies as a rehabilitated person." Id., Ex. C, p. 65: 13-15. See In re Weider, 52 Cal.Rptr.3d 147, 160-61 (noting that "the overarching consideration in the suitability determination [process] is whether the inmate is *currently* a threat to public safety") (emphasis added) (citing Dannenberg, 34 Cal.4th at pp. 1071, 1083, 1085-86).

---

[12] Petitioner does not discount the "aggravated assault" he perpetrated on Mr. Silva (see Answer, p. 2: 16-18; id., Ex. B). Petitioner submits, however, that even when that is considered together with the murder of petitioner's crime partner, Mr. Hasznos, here, the circumstances simply do not warrant or justify petitioner's continued incarceration -- particularly in light of the Governor's concession that petitioner may have had only "limited involvement" (Answer, Ex. E, p. 2) in the murder.

F. The State Court Decision Was Based On An Unreasonable
   Determination of the Facts.

A state court decision may be deemed to have been based on an

"unreasonable determination" of the facts in light of the

evidence presented in the state court proceeding (28 U.S.C.

§ 2254(d)(2)) if, *inter alia,* the finding of the state court was

unsupported by sufficient evidence. <u>Taylor v. Maddox</u>, 366 F.3d

992, 999 (9th Cir. 2004) (citations omitted). Here, the state

court found, in relevant part, "*Petitioner's own admission that*

in conjunction with an accomplice, *he kicked and beat Mr. Hasznos*

*to death* provided the Governor with some evidence that the

offense was carried out in a dispassionate and calculated

manner." Petition, Ex. G, p. 4 (emphasis added); Answer, Ex. F,

p. 4 (same). The record is clear, however, that petitioner has

*never* made such an "admission." Petition, pp. 5-6 (Factual

Allegations, ¶ 16). Indeed, the Governor himself (correctly)

found that "Mr. Lewis admitted at his 2001 parole hearing to

kicking and beating Mr. Hasznos. *His claim over the years has*

*been that the fight ultimately moved from indoors to outdoors,*

*and once outdoors, Mr. Colbert alone beat and at some point*

*stabbed Mr. Hasznos.* He told the 2001 Board that he was inside

during this time and by the time he went outside, Mr. Hasznos

appeared dead." Petition, Ex. E, p. 2 (emphasis added); Answer,

Ex. E, p. 2 (same). Because petitioner, contrary to the Superior

Court's finding, did not, and does not, admit that "he kicked and

beat Mr. Hasznos to death" (Answer, Ex. F, p. 4), such an

admission could *not* constitute "some evidence" justifying the

denial of parole here. Respondents implicitly concede this point

by omitting the critical prepositional phrase "to death" in
recounting the Superior Court's reliance on "Petitioner's own
admission...."  See Answer, p. 4: 19-20 ("the court noted ...
Petitioner's own admission, corroborated by Colbert's testimony,
that *he kicked and beat Hasznos*, helping to wrap his nude,
brutalized body in a rug for disposal in a parking lot....")[13]
(emphasis added).  Consistently with respondents' Answer (see
id.), petitioner *has* admitted to kicking and beating Mr. Hasznos.
See Traverse, ante, ¶ 4.  But he has always denied, *as the
Governor himself recognized,* that anyone but Mr. Colbert, *acting
alone and without any prior knowledge on the part of petitioner,*
actually killed Mr. Hasznos.  See Answer, Ex. E, p. 2.  The
record is devoid of *any* support for the state court's finding
here that petitioner made an "admission" to "kicking and beating
Mr. Hasznos *to death*."  Answer, Ex. F, p. 4 (emphasis added).
*A fortiori,* that finding "is unsupported by substantial evidence
in the state-court record."  Taylor, 366 F.3d at 1000; cf. id. at
1001 ("where the state courts plainly misapprehend or misstate
the record in making their findings, and the misapprehension goes
to a material factual issue that is central to petitioner's
claim, that misapprehension can fatally undermine the fact-
finding process, rendering the resulting factual finding
unreasonable").

     To the extent that the state court may have relied on the
Governor's statement, derived from an affidavit filed by an

---

[13]The state court did *not* describe the body as "brutalized."  See
Traverse, ante, ¶ 11.

unnamed investigating inspector of the San Francisco Police
Department, that "*Mr. Colbert claimed* to have watched Mr. Lewis
beat, kick, and stab the victim [and] *Mr. Colbert said* that
Mr. Lewis later described 'finishing off' Mr. Hasznos by hitting
him in the head with a rock" (Answer, Ex. E, p. 2 (emphasis
added)), the Governor himself acknowledged that that constituted
only "*some* evidence" in the record (id. (emphasis added)) and
*not* the requisite "substantial" evidence. Taylor, 366 F.3d at
1000.    Moreover, as noted ante, the Governor (as opposed to a
reviewing court) must make his findings based upon a
preponderance of the evidence. Morrall, supra, 102 Cal.App.4th
at 302; *accord* Tripp, 2007 DJDAR at 5878; cf. Hamdi, 124 S.Ct. at
2651 (noting that "some evidence" has never been utilized as a
"standard of proof"). It would have been legal error for the
state court to sustain a finding that the Governor himself
acknowledged constituted only "some evidence." This too renders
the state court's factual determination (regarding petitioner's
alleged "admission") unreasonable. Taylor, 366 F.3d at 1001
("where the state court's legal error infects the fact-finding
process, the resulting factual determination will be unreasonable
and no presumption of correctness can attach to it").

Moreover, respondents do not dispute petitioner's factual
contention (see Petition, p. 15; id., Ex. F, ¶ 6) that the
affidavit mentioned by the Governor was outside the record that
was before the Board. Rather, respondents contend that
"Petitioner's assertion that the Governor's review is limited to
the same materials as provided to the Board is incorrect."

Answer, p. 13, fn. 6. The Governor, according to respondents, "may rely on any evidence -- whether or not provided to the Board -- when considering Petitioner's parole suitability." Id. Respondents are clearly mistaken. See Cooper, supra, 2007 DJDAR at 11522 ("Evidence not before the Board cannot be relied upon by the Governor."), 11525 ("The Governor's review must be of the same record that was before the Board."); In re Arafiles, 6 Cal.App.4th 1467, 1477 (1992) (noting that Governor's review consists of "a re-examination of proceedings already had without the taking of any new evidence") (cited in Cooper, 2007 DJDAR at 11525) (citation and internal quotation marks omitted).

Additionally, the affidavit mentioned by the Governor was filed by an *unnamed* inspector and consisted of *multiple levels of hearsay*, without any indication of the circumstances under which the hearsay statements were made. The statements recounted in the affidavit therefore lacked sufficient "'indicia of reliability'" to be relied upon, consistent with due process, by either the Governor or the state court. Biggs, 334 F.3d at 915.

Finally, the state court found that there was some evidence to support "a belief that the motive was very trivial in relation to the offense." Answer, Ex. F, p. 4. "*On this point*, the Governor's determination was a reasonable exercise of discretion...." Id. (emphasis added). Contrary to the state court's (factual) determination, however, the Governor made no finding here that "the motive was very trivial in relation to the offense." Id.; see also Answer, p. 4: 24. Cf. In re DeLuna, 126 Cal.App.4th 585, 593-94 (2005) (noting that court "must

confine [its] review to the stated factors found by the [parole
authority], ... not to findings that the Attorney General now
suggests the [parole authority] might have made"). For this
reason also,[14] the fact-finding process was defective. See
Taylor, 366 F.3d at 1001 (noting that a state court's
misapprehension or misstatement of the record "can fatally
undermine the fact-finding process, rendering the resulting
factual finding unreasonable").

    G. The Suitability Factors Support Petitioner's Release

    As the Board found (see Petition, Ex. C), petitioner argued (id.,
pp. 16-18), and respondents do not dispute, the suitability factors
identified in the regulations, § 2281(d), support the Board's finding
here that petitioner is suitable for parole. In this regard, it is
significant that the regulatory framework itself creates a federally
protected liberty interest in consideration of the suitability
factors. See Petition, p. 16; § 2000(a)(5) ("'Shall' is mandatory").

---

[14]If the Governor had made such a finding, it would have been
unreasonable under 28 U.S.C. § 2254(d)(1) for the state court to
have sustained it. See e.g. Barker, supra, 2007 DJDAR at 7559
("[T]he record does not indicate that [petitioner's] motive was
'very trivial in relationship to [his] offense.' (§ 2281, subd.
(c)(1)(E).) 'The offense committed by most prisoners serving
life terms is, of course, murder. Given the high value our
society places upon life, there is no motive for unlawfully
taking the life of another human being that could not reasonably
be deemed "trivial." The Legislature has foreclosed that
approach, however, by declaring that murderers with life
sentences must "normally" be given release dates when they
approach their minimum eligible parole dates.... The reference
in Board regulations to motives that are "very trivial in
relationship to the offense" therefore requires comparisons; to
fit the regulatory description, the motive must be materially
less significant (or more "trivial") than those which
conventionally drive people to commit the offense in question,
and therefore more indicative of a risk of danger to society if
the prisoner is released than is ordinarily presented.'")
(quoting In re Scott, 119 Cal.App.4th 871, 893 (2004)).

III

EVIDENTIARY HEARING

To the extent there remain disputed issues of fact (for instance, as to the extent of petitioner's involvement in the murder of Mr. Hasznos or whether the affidavit relied upon by respondent Schwarzenegger was part of the record before the Board) that may be determinative of petitioner's claims here, the Court should conduct an evidentiary hearing. As noted in the Traverse, ¶ 26, petitioner "has not shown 'a lack of diligence at the relevant stages of the state court proceedings'" (Horton, supra, 408 F.3d at 582 n. 6), and thus is "not subject to AEDPA's restrictions on evidentiary hearings." Id. Petitioner is therefore "entitled to an evidentiary hearing on a claim where the facts are in dispute if (1) he has alleged facts that, if proven, would entitle him to relief, and (2) he did not receive a full and fair evidentiary hearing in state court." Id. Those predicates, petitioner submits, have been satisfied here.

CONCLUSION

A

Contrary to respondents' allegations, petitioner has a clearly established liberty interest in parole that is protected by the procedural safeguards of the Due Process Clause of the Fourteenth Amendment. Accordingly, decisions to deny parole must be supported by some evidence with indicia of reliability and may not be otherwise arbitrary.

One must look to state law to answer the question, "'Some evidence' of what?" State law provides that "[w]hen reviewing

the Governor's decision, '[t]he test is not whether some evidence supports the *reasons* ... for denying parole, but whether some evidence indicates a parolee's release *unreasonably endangers public safety*.'" Cooper, 2007 DJDAR at 11521 (citing Lee, 143 Cal.App.4th at 1408) (emphasis in original); *accord* Lawrence, 2007 DJDAR at 7376; Willis, __ F.Supp.2d at __, 2007 WL 1232060, *9.    Whether a crime possesses the necessary predictive value for a court to uphold the denial of parole depends both on the nature of the crime and how long ago it happened.    Lawrence, 2007 DJDAR at 7374.

Here, because of the nature and age of petitioner's commitment offense, it does not supply "some evidence" that petitioner is a present threat to public safety.    Whatever predictive value the commitment offense may have had 30+ years ago has dissipated given petitioner's exemplary prison record and rehabilitation over the ensuing years.    And similarly, because reliance on an immutable factor without regard to or consideration of subsequent circumstances runs contrary to the rehabilitative goals espoused by the prison system, the nature and age of petitioner's prior offenses no longer constitute "some evidence" rationally indicating that petitioner is *currently* a threat to public safety.    Under the circumstances present here, the Governor's reliance on petitioner's commitment offense and prior criminal history to reverse the Board's finding that petitioner is suitable for parole violated due process.    The state court's decision to the contrary (1) constituted an unreasonable application of clearly established federal law and

(2) was based upon an unreasonable determination of the facts.
Accordingly, pursuant to 28 U.S.C. § 2254(d), petitioner is
entitled to habeas relief.  In light of the (undisputed) fact
(see Petition, p. 4, Factual Allegations, ¶¶ 10 and 12) that when
Governor Schwarzenegger reversed the Board's suitability finding
here, petitioner had already been in prison more than a decade
longer than the total term established by the Board for
petitioner's offense (including his criminal history), the Court
should grant the petition and order that petitioner be released
forthwith, as well as that any "actual surplus time served in
prison [be] deducted from his parole period."  Martin, supra, 448
F.Supp.2d at 1145 (citing McQuillion v. Duncan, 342 F.3d 1012,
1015 (9th Cir. 2003)).

B

When petitioner was much younger, he engaged in criminal
activity.  On September 23, 1976, he and two crime partners,
Jeffrey Colbert and Gary Hasznos, robbed the Odyssey Head Shop in
Hayward.  Petitioner assaulted the store owner and left the
proceeds of the robbery ($1,000) with Mr. Hasznos.  Mr. Hasznos
later reported the robbery and kept the proceeds of the robbery
for himself.  Two days after the robbery, at the home of
petitioner's cousins in San Francisco, Mr. Hasznos was kicked and
beaten by both Mr. Colbert and petitioner.  Ultimately,
Mr. Hasznos was killed.  Petitioner assisted in disposing of the
body.  Mr. Colbert and petitioner were *both* charged with the
murder of Mr. Hasznos.  Answer, Ex. B, p. 4.  Mr. Colbert
received a reduced sentence and testified that it was petitioner

31

who had killed Mr. Hasznos. Petitioner accepts full
responsibility for his role in the events that led to the murder,
but maintains to this day that it was Mr. Colbert who, acting
alone, outside petitioner's presence and without any prior
knowledge on the part of petitioner, in fact murdered
Mr. Hasznos.[15]

Petitioner has now been incarcerated for 30+ years on a
sentence of seven years to life. He has been eligible for parole
since 1984 and been considered for release on parole 17 times.
He is now in his sixties, i.e., "of an age that reduces the
probability of recidivism" (Cooper, 2007 DJDAR at 11524), and
legally blind. In 2004, for the second time in three years, he
was found suitable for release on parole by the Board. The
Governor reversed the Board's finding of parole suitability,
relying exclusively on petitioner's criminal history and the
concededly uncertain circumstances of petitioner's involvement in
the murder of Mr. Hasznos. After more than 30 years, neither of
those factors provides "some evidence" that petitioner is
currently a threat to public safety. In the opinion of the very
psychiatrist employed by respondents to evaluate a prisoner's
potential for future violence, *if rehabilitation is possible for
any person, petitioner qualifies as a rehabilitated person.*
Petition, p. 3; id., Ex. C, p. 65: 13-15. Here, as presaged in
Biggs, supra, 334 F.3d at 916-17, given petitioner's prolonged
demonstration of exemplary behavior and rehabilitation,

---

[15]Petitioner's account has remained essentially unchanged from
that contained in the probation report of his offense. See
Answer, Ex. B, Defendant's Statement at 5-6.

respondents' continued reliance on the circumstances of petitioner's commitment offense and his conduct prior to imprisonment "runs contrary to the rehabilitative goals espoused by the prison system" and violates due process.

C

In exercising his authority over paroles, the Governor, *as opposed to a reviewing court,* must apply a preponderance of the evidence standard.  Here, in reversing the Board's grant of parole to petitioner, the Governor noted that "some evidence" (only) indicated that petitioner may have been a "major participant" in the killing of Mr. Hasznos.  He did not purport to rely on that minimal evidence which, respondents do not dispute, was outside the record that was before the Board and, in any event, consisted of inherently unreliable multiple hearsay. To the extent that the state court relied on that evidence and, additionally, misapprehended or misstated the record by finding that petitioner admitted to actually killing Mr. Hasznos, the state court decision was based on an unreasonable determination of the facts.

D

To the extent there remain disputed issues of fact here, petitioner is entitled to an evidentiary hearing.

E

Petitioner prays that this Court will now order his immediate release.

Dated: _8/14/07_

                         Respectfully submitted,

                         Charles H. Lewis
                         Charles W. Lewis
                         Petitioner pro se

34

1                    UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3

4    CHARLES W. LEWIS,                    )    CASE No. C 07-02465 CW (PR)
                                          )
5             Petitioner,                 )    PROOF OF SERVICE
                                          )
6      v.                                 )
                                          )
7    ARNOLD SCHWARZENEGGER, et al.,       )
                                          )
8    _____ Respondents. _____   )

9         I, the undersigned, hereby certify that I am over the

10   age of eighteen years and am not a party to the above

11   entitled action.

12        On ___August 19_____, _2007_, I served a copy of
     TRAVERSE TO ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS;
13   MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF_____

14   by placing said copy in a postage paid envelope addressed

15   to the person(s) hereinafter listed, by depositing said

16   envelope in the United States Mail:

17   (List all person(s) served in this action.)

18
     Amanda Murray
19   Deputy Attorney General
     Department of Justice
20   455 Golden Gate Avenue, Suite 11000
     San Francisco, CA 94102-7004
21

22

23

24

25        I declare, under the penalty of perjury, that the

26   foregoing is true and correct.

27   DATED: ___8/19/07_____    _Michael Brodheim_____
                                      Declarant's signature
28   __Michael Brodheim_____
     Declarant's printed name

USDC-PROOF-3