IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES W. LEWIS,<br><br>            Petitioner,<br><br>    v.<br><br>ARNOLD SCHWARZENEGGER, SUZAN HUBBARDS, Acting Warden,<br><br>            Respondents.<br>_____/ | No. 07-02465 CW<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING MOTION TO EXPAND RECORD<br>(Docket # 21) |

   On May 8, 2007, Petitioner Charles W. Lewis, a state prisoner incarcerated at the California Medical Facility in Vacaville, California, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging as a violation of his constitutional rights Governor Arnold Schwarzenegger's February 11, 2005 reversal of the Board of Parole Hearings' (Board) September 15, 2004 decision that Petitioner was suitable for parole.  On July 16, 2007, Respondents filed an answer.  Petitioner timely filed a traverse.  On December 30, 2009, the Court granted Petitioner's motion for appointment of counsel and granted leave for counsel to file supplemental briefing.  On March 30, 2010, counsel filed a supplemental traverse and a motion to expand the record or for judicial notice.  Respondents oppose the motion to expand the

record or for judicial notice.

After the matter was submitted, on April 22, 2010, the Ninth Circuit issued its decision in <u>Hayward v. Marshall</u>, 603 F.3d 546 (9th Cir. 2010) (<u>en banc</u>), which addressed federal habeas review of the Board's decisions denying parole to California state prisoners. On May 17, 2010, the Court ordered the parties to file supplemental briefing addressing the <u>Hayward</u> <u>en banc</u> decision. Respondent filed supplemental briefing on June 2, 2010; Petitioner filed his on June 16, 2010.

Having considered all of the papers filed by the parties, the Court grants the motion to expand the record and grants the petition for a writ of habeas corpus.

BACKGROUND

I. Commitment Offense

The following facts are taken from the superior court's denial of Petitioner's state habeas petition and the transcript of the 2004 Board Hearing. See <u>In the Matter of the Application of Charles W. Lewis For a Writ of Habeas Corpus</u>, Writ No. 5178 (October 12, 2005).

On September 23, 1976, Petitioner, then aged thirty-four, with Jeffrey Colbert and Gary Hasznos, participated in the robbery of a retail store. During the robbery, Petitioner pistol whipped and shot the store owner in the shoulder. Then, Petitioner tied up the owner, covered his head with a blanket and took $1,000 from his wallet. After the robbery, Hasznos was given the $1,000 to hold. Later, Hasznos told Petitioner and Colbert that he no longer had the money. Petitioner and Colbert kicked, beat and stabbed

Hasznos. Petitioner and Colbert bundled his nude corpse into a rug and dumped it in the Candlestick Park parking lot where it was discovered the next day. The body had multiple abrasions and cuts from the top of the head to the feet. The lethal injury was either a single or multiple blow or blows to the back of the head. A stab wound on the left side of the chest had entered the lung. Petitioner and Colvert were arrested for Hasznos' murder.

A jury found Petitioner guilty of first-degree murder and he pleaded no contest to the charge of first-degree robbery with a firearm. Petitioner received an indeterminate sentence of seven years to life for first-degree murder and a concurrent sentence of five years to life for robbery with a firearm.

After approximately seventeen parole denials from the Board, on October 11, 2001, the Board found that Petitioner was suitable for parole. On March 8, 2002, former Governor Gray Davis reversed the Board's decision. At the Board's September 15, 2004 hearing, it again found Petitioner suitable for parole. On February 11, 2005, Governor Schwarzenegger reversed this decision.

II. Board Decision

At the September 15, 2004 hearing, the Board reviewed Petitioner's criminal history which began with two convictions for battery when he was a juvenile. Transcript (TR) of September 15, 2004 Hearing at 23. In 1962, he was convicted of statutory rape. TR at 25. In 1966, Petitioner was convicted of two bank robberies and was sentenced to a term in federal prison. Id. In 1972, he was convicted of possession of narcotics and solicitation to commit a felony. TR at 25. He was on federal parole at the time of the

3

1  commitment offense.
2     The Board reviewed Petitioner's programming and self-help
3  classes.  TR at 43.  Petitioner started programming almost
4  immediately after entering into the prison system.  TR at 43.  He
5  completed a sufficient number of classes to receive his General
6  Education Diploma and to receive an Associate of Arts degree.  Id.
7  He was just a few credits shy of getting a Bachelor of Arts degree.
8  Id.  He had previously been accepted by San Francisco State
9  University and awarded a grant to pursue his education there.  Id.
10     Since 1998, Petitioner has been permanently vision-impaired.
11 See TR at 3.  Since that time, he has worked as a teacher's aide
12 for the vision-impaired in the vocational computer program.  Id. at
13 43.  At the same time, he took classes in the Adult Basic Education
14 Disability Placement Program where he received above-average to
15 exceptional grades.  Id. at 44.  Petitioner has participated in
16 many self-help programs.  The most recent of these programs were
17 Pastoral Care Services, where he provided care for terminally ill
18 patients, VOLT, a voluntary self-help group of inmates focusing on
19 increasing their concern and empathy for the victims of violent
20 crimes, Alcoholics Anonymous, Meditation and Stress Reduction.
21 Also, Petitioner has been an advocate for the vision-impaired,
22 providing them with large print religious and reading materials and
23 facilitating their entrance into disability placement programs.
24 Id.  Petitioner has had various jobs during his time in prison.
25 Many of Petitioner's supervisors wrote laudatory reviews of his
26 performances on his jobs and in self-help programs.  Id. at 43, 44.
27     The Board reviewed reports from Petitioner's counselors.

4

Counselor Coehlo[1] wrote that Petitioner has many employable skills as a youth counselor, horticulturist, landscaper and teacher of computer skills to the vision-impaired. Id. at 46. Counselor Coehlo opined that Petitioner posed a low degree of threat to the public if released. Id. Dr. Gary Collins, Clinical Psychologist, wrote that Petitioner was goal-oriented, diplomatic and had good negotiating skills and that his intelligence and social judgment were above average. Id. at 47.

In reviewing Petitioner's prison disciplinary record, the Board found that Petitioner was disciplined in 1978 for fighting, in 1979 for possession of stimulants and sedatives, in 1980 for disobeying orders, and in 1986 for possession of marijuana. Id. at 48-49. A Board commissioner stated, "There have been no disciplinaries since that time that I can find. You're to be commended for all of your positive programming that you have done since you came to prison and for your positive attitude." Id. at 49.

Another Board commissioner noted, "Despite the availability of alcohol and drugs in prison, it has been over 10 years since there is a record of Mr. Lewis using any mind-altering drug. Much of his criminal behavior was associated with membership in the drug dealing and using culture. . . . He has a criminal history that alone would predict a high risk of re-offense. But his behavior in prison for many years suggests that if rehabilitation is possible for any felon, he qualifies as a rehabilitated person." Id. at 48.

---

[1] Mr. Coehlo's first name was not provided in the record.

1   The Board noted that, if paroled, Petitioner planned to
2 continue to attend Alcoholics Anonymous (AA) and Narcotics
3 Anonymous (NA) and to apply to Project Rebound which helps parolees
4 and probationers obtain admission to San Francisco State University
5 (SFSU).  Id. at 56-57.  The Board also noted that Petitioner had
6 been accepted to SFSU the last time he had been granted parole,
7 which boded well for his acceptance again.
8   The Board found that Petitioner was suitable for parole and
9 would not pose an unreasonable risk of danger to society if
10 released from prison.  Id. at 62.  In doing so, the Board relied on
11 the following factors: Petitioner enhanced his ability to function
12 within the law upon release through participation in educational
13 programs, institutional job assignments working in a furniture
14 factory and as a clerk in a variety of areas and acquired skills to
15 assist others who are vision-impaired.  Id. at 62-63.  He had a
16 stable social history as exhibited by his thirty-eight year
17 marriage.  Id. at 63.  Petitioner had a good understanding of the
18 commitment offense, including the nature and magnitude of the
19 offense, and accepted responsibility for his criminal behavior.
20 His advanced age of sixty-two reduced the probability of
21 recidivism.  Id. at 64.  He had realistic parole plans which
22 included living in a structured environment with counseling and
23 other support services, continuing AA and NA and attending SFSU.
24 Id.
25   The Board acknowledged that Petitioner had received five 115
26 disciplinary reports since his incarceration, but concluded that
27 eighteen years of discipline-free behavior showed a significant

6

1  improvement in his self control. Id. 64.  The Board also cited Dr.
2  Collins' most recent psychological evaluation and past
3  psychological evaluations which supported release. Id.  The Board
4  calculated Petitioner's total period of confinement to be 110
5  months, id. at 67, which would mean Petitioner's release date was
6  September 12, 1986, see Board Worksheet for Release Date, Pet.'s
7  Motion to Expand Record, Exhibit A.
8  III. Governor's Decision
9        Governor Schwarzenegger reviewed the same documents reviewed
10 by the Board and acknowledged that Petitioner had remained
11 discipline-free since 1986, had worked in prison to enhance his
12 ability to function within the law upon release by taking college
13 level classes, vocational classes in office services, computers,
14 upholstery and landscaping, had participated in an array of self-
15 help and therapy programs, had volunteered to help terminally-ill
16 inmates and had been involved in the Educational Disabled Placement
17 Program.  The Governor also acknowledged that Petitioner had
18 received favorable reports from institutional staff and mental-
19 health evaluators which indicated that Petitioner presented a low
20 risk of danger to the public.  The Governor also acknowledged
21 Petitioner's realistic plans for parole but was concerned that he
22 had no current employment prospects.  The Governor concluded that
23 Petitioner "has been in prison a long time, more than 27 years now,
24 and he has made creditable gains.  Indeed his likelihood for
25 recidivism is probably reduced.  But after carefully considering
26 the very same factors that the Board must consider, I find the
27 nature and magnitude of the murder committed by Mr. Lewis and his

7

significant criminal history presently outweigh the positive factors tending to support parole. Accordingly, because I believe his release from prison would pose an unreasonable risk of danger to society at this time, I REVERSE the Board of Prison Terms' 2004 decision to grant parole to Mr. Lewis." Resp.'s Ex. e. at 3.

IV. Superior Court Opinion

The superior court, on habeas review, applied In re Rosenkrantz, 29 Cal. 4th 616, 677 (2002), the controlling California Supreme Court authority at the time. Rosenkrantz provided that the governor must "independently review the evidence and may give it different weight [than the Board did] and resolve any conflicts. Accordingly, due process of law requires only that some evidence relevant to the enumerated factors support the Governor's decision." Resp.'s Ex. F, In the Matter of Lewis, Writ No. 5178 at 2 (citing Rosenkrantz at 677). The court acknowledged that the Governor relied upon the gravity of the commitment offense and Petitioner's significant criminal history to reverse the Board's decision. Under the Rosenkrantz standard, the court found that some evidence supported the Governor's conclusion that the gravity of the commitment offense weighed against a finding that Petitioner was suitable for parole. The court found that the fact that Petitioner kicked and beat the victim to death provided some evidence that the offense was carried out in a dispassionate and calculated manner and that the motive, a small amount of stolen money, was very trivial in relation to the offense. Additionally, the court found that there was some evidence to support the Governor's conclusion that Petitioner's significant criminal

8

history weighed against a finding a suitability for parole.

The state appellate court and supreme court denied the petitions filed in those courts.

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).  The first prong applies both to questions of law and to mixed questions of law and fact, Williams, 529 U.S. at 407-09, while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion to analyze whether the state judgment was erroneous under the standard of § 2254(d).  Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).  In the present case, the only state court to address the merits of Petitioner's claim was the San Francisco County superior court.

9

DISCUSSION

I. Petitioner's Motion to Expand the Record

Petitioner's motion to expand the record or for judicial notice of the Board's calculation of his release date to be September 12, 1986 is granted pursuant to Rule 7 of the Rules Governing § 2254 cases, which allows the parties to expand the record by submitting additional materials relating to the petition. As indicated by Petitioner, at the 2004 hearing, the Board calculated Petitioner's release date to be 110 months from his date of incarceration. The document Petitioner submits identifies that specific date to be September 12, 1986. Respondents' argument that, under AEDPA, the only documents this Court may review are those that were before the state court is unpersuasive because the calculation of Petitioner's release date was before the state court; the submitted document merely clarifies the specific date that results from the calculation. See TR at 67 (calculating period of confinement to be 110 months).

II. Merits of Petition

Petitioner argues that his due process rights were violated by the Governor's decision to deny him parole because that decision was not supported by "some evidence" in that he is not currently a threat to the public safety.

There is no constitutional or inherent right of a prisoner to be released before the expiration of a valid sentence. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). However, when a state statutory scheme creates a presumption that parole release will be granted unless designated findings are made,

10

an inmate does have a constitutionally protected expectancy of release on parole. Id. at 12; Board of Pardons v. Allen, 482 U.S. 369, 373 (1987); Hayward, 603 F.3d at 561. In California, the parole statutes create certain procedural rights for prisoners. Id. Moreover, the California Supreme Court, in In re Lawrence, 44 Cal. 4th 1181 (2008), and In re Shaputis, 44 Cal. 4th 1241 (2008), established that, as a matter of state constitutional law, "some evidence" of future dangerousness is necessary for the denial of parole. Id. at 562. Pursuant to these California Supreme Court cases, the paramount consideration for the Board and the Governor is whether the inmate currently poses a threat to public safety. Id. An "aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state' supports the inference of dangerousness." Id.

Thus, for federal habeas review, parole decisions in California are analyzed under the "some evidence" standard set forth by the California Supreme Court in Lawrence and Shaputis. Id. at 562-63. Federal habeas courts must "decide whether the California judicial decision approving the governor's decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Id. at 563.

In their supplemental brief, Respondents argue that this standard is incorrect and that Hayward only allows a federal habeas

11

court to determine whether California's procedures were fundamentally sufficient to protect the prisoner's state substantive right and that to do otherwise would constitute an improper review of state authority rather than of Supreme Court authority as is required under AEDPA.  These arguments were foreclosed by post-Hayward Ninth Circuit cases.  In Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010), the court noted that the respondents, who had raised the same arguments that Respondents do here, had failed to recognize that state-created rights may give rise to a liberty interest that may be enforced under federal law. The court explained that Hayward, by holding that a federal habeas court may review the reasonableness of the state court's application of California's "some evidence" rule, was holding that compliance with that state requirement was mandated by the federal Due Process Clause.  Id.  Furthermore, Pearson explained that "Hayward specifically commands federal courts to examine the reasonableness of the state court's application of the California 'some evidence' requirement, as well as the reasonableness of the state court's determination of the facts in light of the evidence. That command can only be read as requiring an examination of how the state court applied the requirement."  Id.; accord Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010).

California law provides that a parole date is to be granted unless it is determined "that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration

12

. . ."  Cal. Penal Code § 3041(b).

The California Code of Regulations sets out the factors showing suitability or unsuitability for parole that the Board is required to consider.  Cal. Code Regs. tit. 15, § 2402(b).  These include "[a]ll relevant, reliable information available," such as:

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.  Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Id.

Circumstances tending to show unsuitability for parole include the nature of the commitment offense and whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner."  Id. § 2402(c).  This includes consideration of the number of victims, whether "[t]he offense was carried out in a dispassionate and calculated manner," whether the victim was "abused, defiled or mutilated during or after the offense," whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense."  Id.

Other circumstances tending to show unsuitability for parole are a previous record of violence, an unstable social history, previous sadistic sexual offenses, a history of severe mental

13

health problems related to the offense, and serious misconduct in prison or jail. Id.

Circumstances tending to support a finding of suitability for parole include the lack of a juvenile record, a stable social history, signs of remorse, that the crime was committed as a result of significant stress in the prisoner's life, a lack of criminal history, a reduced possibility of recidivism due to the prisoner's present age, that the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release, and that the prisoner's institutional activities indicate an enhanced ability to function within the law upon release. Id. § 2402(d).

The California Supreme Court, in Lawrence, explained the "some evidence" standard as follows:

> This standard is unquestionably deferential, but certainly not toothless, and "due consideration" of the specified factors requires more than rote recitation of the relevant factors with no reasoning establishing a rational nexus between those factors and the necessary basis for the ultimate decision–-the determination of current dangerousness. . . .
>
> Indeed, our conclusion that current dangerousness (rather than the mere presence of a statutory unsuitability factor) is the focus of the parole decision is rooted in the governing statute. We have observed that "'[t]he Board's authority to make an exception [to the requirement of setting a parole date] based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is 'normally' to be granted. Otherwise, the Board's case-by-case rulings would destroy the proportionality contemplated by Penal Code section 3041, subdivision (a), and also by the murder statutes which provide distinct terms of life without parole, 25 years to life, and 15 years to life for various degrees and kinds of murder.'"
>
> Consistent with this statutory regime, the Board's regulations, establishing a matrix of factors for

14

> determining the suggested base terms for life prisoners, contemplates that even those who committed aggravated murder may be paroled after serving a sufficiently long term if the Board determines that evidence of postconviction rehabilitation indicates they no longer pose a threat to public safety. . . . [T]he statutory and regulatory mandate to normally grant parole to life prisoners who have committed murder means that, particularly after these prisoners have served their suggested base terms, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole when there is strong evidence of rehabilitation and no other evidence of current dangerousness.

In re Lawrence, 44 Cal. 4th at 1210-11 (citations omitted).

In 2005, the superior court did not have the guidance provided by the California Supreme Court's 2008 In re Lawrence opinion. Thus, the court relied upon Rosenkrantz, which held that due process is satisfied if some evidence of the factors enumerated in § 2402 support the governor's decision. However, Lawrence specifically rejected that view, holding that there must be a nexus between the factors and the determination of current dangerousness. Here, neither the Governor nor the superior court articulated a rational nexus between the factors upon which they relied--the commitment offense and Petitioner's past criminal history--and Petitioner's current dangerousness. In fact, all of the current factors under § 2402(d) support the Board's finding that Petitioner presents an exceedingly low risk of dangerousness: he has a stable social history; expresses sincere signs of remorse; and has realistic plans for release and marketable vocational skills that can be put to use upon release. Petitioner's advanced age of sixty-two at the time of the 2004 Board hearing and the fact that he is vision-impaired point to an extremely reduced possibility of

15

1  recidivism.  Moreover, Petitioner consistently receives laudatory
2  reports from staff and mental health workers, volunteers to work
3  with the terminally ill and disabled and has not been involved in a
4  disciplinary incident in prison for more than twenty years.  The
5  court and the Governor do not explain how the commitment offense,
6  which occurred more than thirty years ago, and Petitioner's prior
7  criminal history, which is even more remote in time, evidence
8  current dangerousness under these circumstances.  As stated in
9  Lawrence, the statutory mandate normally to grant parole to life
10 prisoners who have committed murder means that, particularly after
11 these prisoners have served their base terms, the commitment
12 offense alone rarely will provide a valid basis for denying parole
13 when there is strong evidence of rehabilitation and no other
14 evidence of current dangerousness.  Here, there is strong evidence
15 that Petitioner is a rehabilitated individual and there is
16 absolutely no evidence of current dangerousness.  Furthermore,
17 Petitioner has long since served his base term of seven years and
18 his matrix term of 110 months, as calculated by the Board.  Under
19 these circumstances, the immutable facts of the commitment offense
20 and his prior criminal history no longer constitute evidence of
21 present danger if Petitioner were released into the community.
22      Thus, the state court rulings were unreasonable applications
23 of California's "some evidence" standard as elucidated in Lawrence.
24 The petition for a writ of habeas corpus is granted.
25      Respondents argue that, if the petition is granted, the proper
26 remedy is to remand to the Governor for a new review of
27 Petitioner's parole suitability or to the Board for a new hearing

16

that comports with due process.  Because the Board has twice found Petitioner suitable for parole, a new hearing that comports with due process is unnecessary; for the reasons recounted above, the Board's decisions have comported with due process.  Because the Governor must base his decision on the same record that was before the Board, see Cal. Penal Code § 3041.2(a); Guardado v. Perez, 2009 WL 4907832, *3 (N.D. Cal.); In re Burden, 169 Cal. App. 4th 18, 30 (2008); In re Smith, 109 Cal. App. 4th 489, 507 (2003), to remand to the Governor for further consideration would be futile.  On this record, there is no evidence he could cite that would establish Petitioner's current dangerousness.  Respondents' argument, citing Cal Code Reg., tit. 15 § 2281, that the Governor may rely on evidence that was not before the Board is incorrect.  Section 2281 merely states that all relevant, reliable information available to the parole board shall be considered to determine parole suitability; it does not provide that the Governor may rely on evidence not considered by the Board.

　　　　Therefore, the Governor's decision is vacated and this case is remanded to the Board to carry out its 2004 decision that Petitioner is suitable for parole.

　　　　Petitioner argues that he is entitled to discharge from parole upon release because he should be credited on his parole term with the excess time he served.  Petitioner contends that, under California Penal Code § 3000((b)(2), his parole term is three years and, had he been released on the date to which he was entitled in 2004, his three-year parole term would have long since expired. The Court abstains from making this decision and remands to the

17

Board for its determination of the length of Petitioner's parole term or whether he should be discharged rather than paroled.

## CONCLUSION

Accordingly, the Court grants the motion to expand the record, grants the petition for a writ of habeas corpus, vacates the Governor's decision and remands to the Board to implement its 2004 decision finding Petitioner suitable for parole. The Board shall determine the length of Petitioner's parole term, if any.

Within thirty days of the date of this Order, Respondents shall notify the Court of Petitioner's parole date. Within seven days thereafter, Respondents shall notify the Court whether Petitioner has been released. The Court retains jurisdiction to enforce its Order. The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: August 31, 2010

CLAUDIA WILKEN
United States District Judge

18